STARLING REALTY CORPORATION, Appellant, *v.* THE STATE OF NEW YORK, Respondent.*

(Claim No. 25342.)

Third Department, March 5, 1941.

*Alfred S. Schechter*, for the appellant.

*Affg. 174 Misc. 375.

*John J. Bennett, Jr., Attorney-General [Leon M. Layden* and *Jacob S. Honigsbaum, Assistant Attorneys-General,* of counsel], for the respondent.

*Truman & Parmerton,* for the Owego National Bank, *amicus curiæ.*

Schenck, J. This is an appeal from a judgment of the Court of Claims which dismissed the claim of appellant herein for rent of premises leased by appellant to the State through the Superintendent of Public Works for the Division of Placement and Unemployment Insurance. The premises are located in Ossining, N. Y., and the stated term of the lease was from November 15, 1937, to November 14, 1940. The lease, however, by its terms was conditional, and provided as follows:

" The above letting is upon the following conditions, all and every one of which the said tenant and its representatives covenant and agree to and with the said landlord, his or its representatives or assigns to keep and perform. * * *

" *Seventeenth.* It is understood and agreed by and between the parties hereto that pursuant to subdivision 7 [6] of section 3 of the Public Buildings Law, the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the Superintendent of Public Works for the leasing of said premises and that no liability shall be incurred by the State beyond the money available for such purpose; provided that, if the moneys available therefor are moneys appropriated for and made available to one or more departments, commissions, boards or officers other than the Superintendent of Public Works the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the one or more departments, commissions, boards or officers to which the premises shall be allotted by such Superintendent of Public Works and that no liability in such cases shall be incurred by the State beyond the money available for such purposes."

Pursuant to this provision the State notified appellant on June 29, 1938, that it was canceling the lease as of July 31, 1938. This action is for rent subsequent to July 31, 1938, and is brought on the theory that the lease was improperly terminated, in that funds were available within the purview of the Public Buildings Law, or, in the alternative, if funds were not available it was because of improper conduct on the part of the State. I do not think that either contention can be sustained. The decision of the court below overruling the objections of claimant and sustaining the State should be affirmed.

It is elemental that leases entered upon by the Superintendent of Public Works are subject to termination under subdivision 6 of section 3 of the Public Buildings Law, which states, " no liability shall be incurred by the State beyond the money available for the purpose." This would apply even though this provision had not been in the lease. ( *Nellis* v. *State of New York*, 204 App. Div. 176.)

That the money to pay the rental for the leased premises was not available is manifest by the budget for the three-month period July 1, 1938, to September 30, 1938, approved by the Social Security Board for employment service. The budget carried provision for but one month's rent for the Ossining office. No further funds for rental for this property were available.

The argument that the money could have been made available is immaterial. It is true that the State agency for unemployment insurance eliminated the Ossining office, along with one or two other offices, of its own volition. It was justified in so doing. The Social Security Board at Washington had recommended reductions, suggesting elimination of the Tarrytown office among others. The State Board for reasons of efficiency of administration elected to substitute Ossining for Tarrytown as the office to be eliminated. The State was certainly not compelled to operate an unnecessary office and to continue to put funds into the budget for the rental of such an office.

Efficient economic administration of government clearly requires that dead wood be cut from administrative expense whenever and wherever possible. Government, furthermore, is supposedly administered for the people and not solely for persons engaged in business transactions with the government as by leasing office space to it. This appellant was aware of the conditional limitation in its lease of the Ossining property. It was subject to that limitation and cannot now complain because the State administration of the Federal Social Security Law has found that it can do without the premises in question and, accordingly, save a not inconsiderable sum in the administration of a governmental function.

The judgment should be affirmed.

CRAPSER and FOSTER, JJ., concur; HILL, P. J., dissents; HEFFERNAN, J., dissents, in an opinion.

HEFFERNAN, J. (dissenting). Claimant is the owner of an office building at Ossining, N. Y. In the summer of 1937 the State of New York entered into negotiations with claimant for the rental of a portion of this building for office space for use by the Department of Labor, Division of Placement and Unemployment Insurance.

The State insisted that as a condition of renting the property extensive structural alterations should be made. Claimant made the suggested alterations at an expense of $1,200.

On October 11, 1937, a written lease between claimant and the State was entered into for a term of three years commencing on November 15, 1937, at an annual rental of $2,200 payable in equal monthly installments.

In June, 1938, less than eight months after the lease became effective, claimant was advised by letter that the State would terminate its lease on July 31, 1938, the reason given being that there were no moneys available with which to pay the rent. This notice was served pursuant to paragraph 17th of the lease which reads as follows: " It is understood and agreed by and between the parties hereto that pursuant to subdivision 7 [6] of section 3 of the Public Buildings Law, the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the Superintendent of Public Works for the leasing of said premises and that no liability shall be incurred by the State beyond the money available for such purpose; provided that, if the moneys available therefor are moneys appropriated for and made available to one or more departments, commissions, boards or officers other than the Superintendent of Public Works the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the one or more departments, commissions, boards or officers to which the premises shall be allotted by such Superintendent of Public Works and that no liability in such cases shall be incurred by the State beyond the money available for such purposes."

After the State vacated the premises claimant endeavored without success to relet the same. This action was then brought to recover the sum of $733.33, being rent claimed to be due under the lease for the months of August, September, October and November, 1938. From a judgment of the Court of Claims dismissing its claim on the merits claimant has appealed to this court.

In 1935 Congress enacted the Federal Social Security Law (U. S. Code, tit. 42, chap. 7) and during the same year the Legislature enacted the Unemployment Insurance Law, being known as article 18 of the Labor Law.

Section 514 of this statute creates the unemployment insurance fund. Section 515 makes provision for the payment of contributions to this fund. Section 518 provides that this article of the Labor Law shall be administered by the Industrial Commissioner and subdivision 2 thereof authorizes him to establish and maintain as many State employment offices as he deems necessary.

Subdivision 5 of the same section directs him to divide the State into districts and requires the maintenance of an office in each of such districts. Section 520 creates an unemployment administration fund and provides for its composition. Section 525 is to the effect that the total expense incurred by the Industrial Commissioner in connection with the administration of the law, including the expenses of maintaining the employment offices so established, shall upon audit by the Comptroller be disbursed from the unemployment administration fund as a charge upon it.

The Federal Social Security Act makes provision for grants in aid to those States which enacted an Unemployment Insurance Law. Under this act the Federal Social Security Board is empowered to certify to the Secretary of the Treasury for payment to each State having an Unemployment Insurance Law such amount as is necessary for the proper administration of the law during the fiscal year, which amount is paid to the State agency charged with the administration of the law. This amount is determined by the Social Security Board on the basis of the State's population, the number of persons covered by the State Unemployment Insurance Law, the cost of the proper administration of the law and such other factors as the Board deems relevant.

It, therefore, appears that the Division of Placement and Unemployment Insurance operates with funds received from the Federal and State governments, Federal funds being available on the basis of a quarterly budget required to be submitted by the Division to the Social Security Board, while State funds are available through annual appropriations by the State Legislature.

By chapter 20 of the Laws of 1938 the State appropriated for this division the sum of $304,916, being the full amount requested of the State by the Division for use during the fiscal year beginning July 1, 1938. For the same period the Division received from the Federal government about $6,000,000 for administration expenses.

It appears from one of the exhibits in the case that the Social Security Board through the Bureau of Unemployment Insurance and the United States Department of Labor through the United States Employment Service agreed to furnish from Social Security funds the entire amount of money necessary annually to maintain the New York State Employment Service as an integral part of the Division of Placement and Unemployment Insurance on condition that the State would expend annually the sum of $304,916.

Reading the various sections of the Federal and State laws together it is obvious that the Federal government agreed to pay the expenses of the administration of the State Unemployment

Insurance Law and that the Industrial Commissioner had the power to make all necessary provisions for the administration of that law. For these purposes the Legislature established two funds, viz., an unemployment compensation fund to be used solely for the payment of benefits under the act; and the unemployment administration fund to be used solely for the payment of administering the law.

On the trial of this claim it appeared that there had been some discussion between the State Department of Labor and the Federal Social Security Board relative to the discontinuance of certain offices. Under date of June 1, 1938, by letter the Social Security Board suggested to the Department of Labor that careful consideration be given to the question of whether or not seventeen offices, including the office at Tarrytown, should be continued. Significantly enough the Ossining office was not included in the enumeration. In its letter the Board did not refuse to provide funds for the continuance of these offices. On the contrary, it said: " If, in the opinion of the State officials, any one or more of them should be continued after June 28, 1938, a full explanation as to the need of such office should accompany the budget request for the July 1–September 30, 1938, quarter."

In reply to the letter of the Federal Social Security Board the Division of Placement and Unemployment Insurance answered that it had decided on its own initiative to close the Ossining office as unnecessary. In that letter the Division stated that the Ossining office should be discontinued instead of the Tarrytown office.

In a letter to claimant under date of July 2, 1938, the Division advised him that " the office at Ossining, New York, is being discontinued by order of the Bureau of Unemployment Compensation.

" Such discontinuance is made effective by the fact that that agency is unwilling to provide funds for the payment of rent or any other expense for an office at Ossining, New York."

The reason for the cancellation of the lease as given in the State's letters is obviously not true. When these letters were written there had been no order by the Federal bureau to discontinue the Ossining office nor had there been any refusal either express or implied by the Federal government to make further funds available for that office. Having decided on its own initiative to discontinue the Ossining office and confronted with the three-year lease permitting cancellation only upon the single condition that there were no funds available for the payment of rent, the State proceeded forthwith to make " the proper arrangements " to bring

about an apparent lack of money available for the payment of rent so as to justify its act of cancellation. In its proposed budget for the quarter beginning July 1, 1938, the Division failed to request funds from the Social Security Board for the payment of rent.

The State's right to cancel this lease is based solely on the ground that it had no funds available to pay the rent. It is apparent that this is a mere subterfuge. The proposed budget of the Division of Placement and Unemployment Insurance for the quarter beginning July 1, 1938, included a line item covering the Ossining office lease for a period of one month only in the requested $149,801.50 for rentals and the budget as approved by the Social Security Board allowed $150,907.05. It is, therefore, apparent that the money made available to the Division for rent was not diminished but on the contrary was actually increased in the July quarter over the April quarter. This increase represented rental for new offices and in part increases in rent over the previous quarter for several existing offices.

It also appears that the budget for the quarter beginning July 1, 1938, as approved by the Social Security Board recites an unincumbered balance and funds " otherwise available " to the Division totaling $250,869.96. The budget for the quarter beginning October 1, 1938, shows that as of June 30, 1938, an unincumbered balance existed in the sum of $316,222.38.

The Board in its administration fund had upwards of $6,000,000 so that it had on hand sufficient money which had already been appropriated from which the rental of this lease could have been paid. From the evidence in the case it is quite clear that the Department of Labor wanted to consolidate some of the unemployment insurance offices and did it by the subterfuge of arbitrarily saying that it did not have the money to pay the rental.

The Board decided to close the Ossining office and then to justify its action of canceling the lease it attempted to create an apparent lack of money to pay the rent by deliberately failing to include that item in its schedule of estimated expenditures.

As this court said in *Campbell* v. *State of New York* (240 App. Div. 304, 309): " Every contract implies good faith and fair dealing between the parties to it. The courts always avoid, if possible, any construction of a contract that is unreasonable or inequitable, and especially one that will place one of the parties at the mercy of the other. (*Simon* v. *Etgen*, 213 N. Y. 589.) ' Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms.' (*Shirai* v. *Blum*, 239 N. Y. 172.)

' In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted.' (*Outlet Embroidery Co. v. Derwent Mills,* 254 N. Y. 179.) A contract will not be construed so as to render it oppressive or inequitable as to either party, or so as to place one of the parties at the mercy of the other, unless it is clear that such was their intention at the time the agreement was made. (*Woods v. Postal Telegraph-Cable Co.,* 205 Ala. 236.) "

A party to a contract cannot avail himself of the non-performance of a condition as a defense to an action on the contract, where he has himself occasioned the non-performance of the condition or prevented it from occurring. (*Amies v. Wesnofske,* 255 N. Y. 156; *Patterson v. Meyerhofer,* 204 id. 96.)

The State had the burden of establishing the non-availability of money relieving it from liability on the lease. (*McNulty v. City of New York,* 168 N. Y. 117.)

The clause in the lease relating to cancellation creates a condition subsequent and the burden of establishing the happening of such a condition to defeat claimant's cause of action rests on the State. (17 C. J. S. Contracts, § 590.)

There is neither justice nor equity nor honor in the State's position in this case. It is attempting to accomplish by subterfuge what no private citizen would be permitted to do. In the performance of its contracts the State should be held to the same accountability as would one of its citizens and it should be governed by the rules of common honesty and fair dealing binding on all individuals.

The judgment appealed from should be reversed on the law and facts and judgment directed in favor of claimant for the relief claimed, with costs.

Judgment affirmed, without costs.