Alexander Del Giorno, J.
This is an action in which three claims have been consolidated for the reason that each requests payment of rent allegedly due under a lease terminated by the State prior to its expiration date. Each claim is for rental due for certain periods after the termination until the expiration date set in the lease.
The claimant has testified that no part of the said claims has been assigned.
*106 The decision herein necessarily rests upon the interpretation of clause 3 of the said lease. The State rested on claimant’s case and moved to dismiss on the merits. Decision was reserved.
The claimant, William E. Drislane, testifying for himself and the co-owner, his sister Katherine R Drislane, stated that at the times involved herein they were and are now the owners of the office building located at 42 North Pearl Street, Albany. They entered into an agreement of lease, dated May 9, 1950, with the People of the State of New York, by and through John A. MacCormack, as Commissioner of Standards and Purchase, wherein they leased to the State areas in the above-mentioned building comprising approximately 42,900 square feet to be used for office purposes by the Division of Placement and Unemployment of the the Labor Department, which later became known as the Division of Employment. The lease by its terms began May 1, 1950 and ended April 30, 1955. The rental was $7,150 per month.
The lease was duly approved by the various officers and divisions of the State necessary for its validity.
Claimant stated further that on or about May 1, 1950 the State entered into possession of the premises, paid the monthly rent and remained there until sometime during the month of July, 1954.
He testified that on or about June 9, 1954, the Commissioner of Standards and Purchase notified the claimants of the intention of the Division of Employment to remove from their premises on or before July 31, 1954, on the alleged ground “ that there would be no funds available for the rental ” of said premises after July 31, 1954. The State disclaimed liability for the rental of such premises beyond such date pursuant to clause 3 of the lease.
On three separate subsequent occasions claimant submitted vouchers for the alleged rent due. All these letters and unpaid vouchers were each time returned by the director of business administration who stated that he had no authority to approve payment, that there were no funds available and that pursuant to the provisions of clause 3 of the lease liability for the rental of such premises was disclaimed. Claimant further testified that during these periods he contacted various agencies of the County of Albany such as the Department of Charities, County Attorney, the General Service Administration. He contacted the realty firms of Picotte Realty, Perkins Realty, Arthur M. Lee and David Cohn; he communicated with the Albany Real Estate Board, and made several trips to New York to visit brokers, all with the intention of renting the premises in miti *107 gation of alleged damages. He stated that he could rent only a small portion to a Dr. Brandistein at $40 per month for a period of 10 months amounting to a credit of $400 in favor of the State.
The total claimed is $64,350 less the said $400 or $63,950.
Claimant added on cross-examination that he maintained the building during the period of vacancy with janitorial services and that he painted one half of its interior.
John A. MacCormack, who was Commissioner of Standards and Purchase of the State in 1954, was called to testify by claimant. He conceded that he sent the letter of June 9, 1954, hereinabove referred to.
He also admitted that the office equipment and staff were removed July 1, 1954 to the Simmons Building in Menands, New York.
William F. Toole, director of leases and auto services of the State of New York since 1948, was subpoenaed by claimant to produce the lease the State had made with the H-M-C Corporation for space in the Simmons building. This lease rented to the State sufficient space to house five offices of the Employment Division previously scattered in Albany, including the subject office. The lease is dated June 4, 1952 and was amended formally on October 24, 1952, December 7, 1955 and March 1, 1956. He said that some notations which appear on the lease had been made after its execution.
He stated on cross-examination that one of these notations, namely, the written words “ no cancellation” was made only for an office record and that it had no relation to clause 3 of the lease which is standard in all State leases. Clause 3 will be set out in full herein.
When questioned about another lease the Employment Service made with Marble Pillar Realty Co., Inc., for space in the Arcade Building, the term to commence on January 1, 1953 and to terminate on December 3, 1957, he stated the Employment Service took space therein to house part of its office.
Mr. Robert N. Purcell, who is the administrative officer of the Division of Employment, testified on behalf of the claimant that the Menands building is three blocks north of the Albany city limits. On May 28, 1954 and on June 1, 1954, he issued invitations to moving firms to submit bids for moving the offices at 42 North Pearl Street, the property in question, and at 488 Broadway, Albany, to 800 North Pearl Street in Menands.
He explained that these two removals were only part of an entire operation; that in all there were involved five ‘" remov *108 ais ” to that one building; that this was the second largest removal operation in Albany. Previously the consolidation of offices in the State Office Building had been the largest.
He testified further that, as was necessary, pursuant to the contractual relations established between the State and the Federal Government, he sought and received the approval of the Bureau of Employment Security, United States Department of Labor, before executing the lease with the claimants.
He assured the court that the work of all the units moved to Menands has continued to this day. On June 8, 1954 the Business Administration office advised Commissioner Mac-Cormack that it wished to notify the owners of 42 North Pearl Street that premises would be vacated on or before July 31, 1954 and that no rent could be paid after the month of July, 1954 as there were no funds allocated for said premises.
Upon cross-examination he stated he has been with the same division for. 20 years. He has the care of the records and has general knowledge of what happens in that division. He gave a general picture of the workings of the division by saying that in 1950 it was located in five separate premises. It also receives and processes unemployment vouchers from all over the State, has its own print shop, provides quarters for its various divisions and has field offices throughout the State. The Menands office is the central administrative office of the entire Division of Employment.
In 1951 the division began to have troubles with some of its quarters in the matter of renewing leases. They were evicted by Montgomery Ward from the APW Building because Montgomery Ward in turn had lost a lease in other quarters and was forced to use for its own business the space the division had been occupying. The division looked around for other quarters but found none suitable. Because of such experiences and the consequent advisability of placing all the administrative offices together, they negotiated for the H-M-C Corporation Building in Menands. The lease in evidence was the result. This consolidation gave the division much greater efficiency in its operation.
He said that the Menands building was to be ready by June, 1953 but was not fully completed until April, 1954. In the meantime they moved one department after another as the building became available.
They paid the first rent to H-M-C Corporation in September, 1954, which was in satisfaction of rent accrued from May, 1954 through September, 1954, He asserted that the consolidation. *109 of offices was dictated by practical necessity, and would have been as helpful to his division in 1949 as it was in 1954.
The last witness was T. Harlow Andrews, director of employment security and finance since 1939, in the Division of Employment, Department of Labor.
He prepared the budgetary requests for the fiscal year July 1, 1953-June 30, 1954, and also for the year July 1, 1954-June 30, 1955.
The budget estimates of 1953-1954, which included the subject building were approved by the United States Department of Labor.
The 1954-955 budget proposed $2,350,240 for rents for the various offices of the Employment Division throughout the State was approved by the Federal agency except for the sum of $50,993, which was held back for reasons not pertinent to the case. The sum requested and received was the same as the one for 1953-1954, although the subject building was not included. He asserted that this is not a line budget but is a management budget, or administrative budget.
He stated that the division was not without funds or the means of procuring funds to pay rent due claimants after July 31, 1954 but that its policy is not to pay for duplication of space. He conceded that payment to claimants for July, 1954 was not provided in the budget but was paid out of surplus the division had on hand by transferring the amount out of surplus to rent. He also stated that his office transferred other surplus moneys to help other bureaus of the department.
He conceded that inability to pay claimants’ rent was caused not by lack of funds but by reason of the moving of the division.
He conceded, too, that although his budget is subject to scrutiny, approval and supervision by the Federal Government, such information is not brought out in dealing with third parties, such as the claimant. So far as a third party is concerned he deals only with the State, as a sovereign power.
The State rested on claimant’s case. Before resting it offered in evidence through Mr. Andrews its exhibits A and B. A set forth the Federal requirements for leasing space. B was a letter from Paul M. Kenefick, Regional Director, United States Department of Labor, Bureaus of Employment Security, to T. Harlow Andrews, Director of Division of Placement and Unemployment Insurance, dated May 2, 1952, concerning space in the Menands building. The last paragraph is pertinent and is as follows; “ You pointed out in your letter that the lease *110 covering space at 42 North Pearl Street does not expire until April 30, 1955 and that any liability in connection therewith after occupancy of the new building must be assumed by your Agency. You are advised that granted funds may not be used to pay rental of space not occupied or used and that every effort should be made to obtain cancellation of the lease without further cost at time of occupancy of the new building or to sublease the property for the duration of the unexpired lease.”
The court has felt impelled to bring out the testimony in detail in order that the background of this claim may be understood clearly.
A construction of clause 3 of the lease is essential to a determination of the rights of the parties herein. That section, so far as it applies to the facts herein, reads as follows: “ It is understood and agreed by and between the parties hereto that, pursuant to law, the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the Commissioner of Standards and Purchase for the leasing of such premises and that no liability shall be incurred by the State beyond the moneys available for such purpose; provided that, if the moneys available therefor are moneys appropriated for and made available to one or more departments, commissions, boards or officers other than the Commissioner of Standards and Purchase the contract of the State hereunder shall be deemed executory only to the extent of the moneys available to the one or more departments, commissions, board or officers to which the premises shall be allotted by such commissioner of Standards and Purchase and that no liability in such cases shall be incurred by the State beyond the moneys available for such purposes.”
In the first place the relations, contractual or otherwise, existing between the United States Labor Department and the State Division of Employment constituted no part of the lease herein. The State contracted as sovereign with the claimant, even though the rental charges were made available to the State by the United States Labor Department.
Secondly, the United States Labor Department did not choose the premises. It merely affirmed to the Division of Employment that the quarters were adequate for the purposes chosen by the Division of Employment and that the stipulated rent therefor would be available to it, so that it could be carried as a bookkeeping item in the State budget, out of which the various rents were paid.
Thirdly, the United States Labor Department never complained about the adequacy of the premises in question and in *111 1954 made available to the State for the 1954-1955 budget the $85,800 toward rent in the Menands building which previously had been available for 42 North Pearl Street, Albany.
The Labor Department was advised that the State had entered into a lease at 800 North Pearl Street, Menands, for quarters which subsequently would house the five administrative divisions of the Employment Division, previously spread out helter-skelter in Albany, in one building. Doubtless this was a very intelligent move, for it tended toward efficiency and better service to the People.
Mr. Frank B. Johnson, Regional Director Bureau of Employment Security, wrote on June 2, 1954 to the executive director of the Division of Employment, that his bureau made available rent for 42 North Pearl Street only for the month of July, 1954 and that ‘ ‘ the reason for this qualification is that the grant will include funds for rental at the new building now being completed at Menands, New York, and operations now carried on at 42 North Pearl Street are to be moved to the new location on or before August 1, 1954.” (Italics ours.)
This letter certainly confirms the fact that the State moved and did not discontinue the operations previously conducted at 42 North Pearl Street. The oral evidence also conclusively proved that such operations as were conducted at the subject premises were never discontinued, but merely transferred to Menands. In effect, the State, like a lady, changed from a beauty parlor with ‘ ‘ limited ’ ’ services to a salon where everything wanted could be found. It was not that the facilities of the beauty parlor were not good enough for the services rendered but that the larger salon could take care of all its needs including what the beauty parlor had been giving.
The ease of Starling Realty Corp. v. State of New York (261 App. Div. 363, affd. 286 N. Y. 272), referred to by both sides, in our opinion is not controlling. In that case the Federal Social Security Board had advised the State that it wished to discontinue certain offices including the one in Tarrytown. The State through correspondence advised the board that it recommended to the board discontinuance of the Ossining office, in place of Tarrytown because it felt that the Tarrytown office could continue rendering effective service because at Tarrytown there was located a large factory with numerous employees who should be served by the office thereat. The board agreed. Therefore, the Ossining office was discontinued pursuant to the “ executory clause ” in the lease which is required in all State leases by virtue of subdivision 2 of section 161-a of the State Finance Law.
*112 The discontinuance in that case was a definite curtailment of offices as requested by the Social Security Board. There can be no quarrel with that. The Court of Appeals sustained the lower court in its decision in favor of the State. Moreover, the court added, at page 277: “We may not ignore the limitations by which the Legislature has thus restricted the expenditures of public moneys ”, and at page 278, approved a finding of the Court of Claims that “ the State Division of Placement and Unemployment Insurance * * * in good faith and for good and sufficient reasons recommended the discontinuance of the Ossining office ”.
Here, however, we find no order from the Federal agency to discontinue the office, no action or resolution by the State to discontinue the office. We find no legislative restrictions. We find only that merely for its own convenience the State moved the office from one landlord lessor to another. The facts here are quite different from those in the Starling case. There, the Appellate Division, at page 365, said: “ The State was certainly not compelled to operate an unnecessary, office ”. (Italics ours.)
In its brief the State quotes a portion of the holding in the Starling case in the Appellate Division report at page 365 (supra) as follows: “Efficient economic administration of government clearly requires that dead wood be cut from administrative expense whenever and wherever possible. Government, furthermore, is supposedly administered for the people and not solely for persons engaged in business transactions with the government as by leasing office space to it.” This is inapplicable to the situation involved in the instant case, where the facts place the State vis-a-vis another party to the contract which it had no right to break any more than Drislane could have evicted it while the rent was being paid.
It is unfortunate that the State may have been forced into this unhappy situation by its own need to serve its People better, but the claimant, too, has rights which must be protected in order that our way of life, which is built upon justice, may flourish.
The claimant proved to the court’s satisfaction that he made adequate attempts both in Albany and New York City, to rent the premises to lessen the damage. He succeeded only in renting a small portion of the premises to a dentist for $400 for which he gave the State credit in his claim.
I find that the claimant has been damaged in the sum of $64,350 less the said $400, making an award of $63,950 as follows: Claim No. 32977, $21,317, with interest from October *113 11, 1954; Claim No. 33010, $21,317, with interest from January 7, 1955; Claim No. 33156, $21,316, with interest from April 25, 1955.
This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.
Findings in accordance with this decision may be submitted.