JOHN WEIL PLUMBING CORPORATION, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 24612.)

Third Department, December 28, 1943.

*McClung, Peters and Simon,* attorneys (*George M. Simon* of counsel), for claimant–appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General; Arthur W. Mattson* and *Burns F. Barford, Assistant Attorneys-General,* of counsel), for respondent.

SCHENCK, J. Claimant appeals from a judgment of the Court of Claims which dismissed its claim on the merits.

In January, 1933, the State entered into a contract with Babor and Comeau Co., Inc., as general contractors, for the construction of the Medium Security Prison, at Woodbourne, New York. On the same day the State entered into a contract with claimant for the sanitary work, involving the installation of various sanitary and plumbing fixtures. Both contracts provided for the completion of the work on March 1, 1934. The general construction contractor ceased work on October 15, 1934, resuming operations on November 5, 1934, and later, during the fore part of December, 1934, abandoned the work entirely and its surety was called upon to complete the contract, which it did in December, 1935, over twenty-one months after the original completion date.

The claim consists of two items: (1) Cutting back portions of the concrete walls in the cell block where sanitary equipment was to be installed in order that the same would hang flush with the wall, which work was beyond the specifications of claimant's contract and was work required to be done by the general contractor; (2) the State's failure to supervise properly the progress of the work of the general contractor and failure to compel usual and customary co-ordination of the work, which resulted in serious delays in the completion of claimant's contract.

The court found that after claimant had installed approximately twenty-four sanitary wall fixtures a conference was had between claimant's representative and the State inspectors and it was determined that the fixtures were not properly hung in that the wall was not even and said concrete had to be chipped back and rubbed down. Claimant removed the twenty-four lavatory fixtures previously installed and undertook the work of chipping of the concrete for the purpose of reducing the clearance between the wall and fixture, which work should properly have been performed by the general contractor and was no part of the work called for by claimant's contract.

The State contends that this chipping back of the concrete walls for the proper installation of claimant's fixtures was done by claimant of its own volition, and not being obligated to perform such work pursuant to the terms of its contract with the State, claimant is not entitled to recover the cost thereof. It appears, however, and the court has found, that the State advised claimant it would not accept the installed fixtures unless the maximum clearance between the concrete wall and the fixture did not exceed the thickness of a " nickel." The court also found that before the claimant performed the additional work the clearance between the wall and fixtures varied from one fourth to three eighths of an inch and although such clearance was excessive and improper it was caused by the uneven and rough concrete walls erected by the general contractor. It is nowhere denied that claimant performed this additional work but the lower court held that claimant could not recover the cost thereof, there having been no direction on the part of the State to perform this extra work. However, the court in his opinion sets forth a conversation between claimant and the State's representative: " The walls have to be cut ", and the State's representative said, " Well, cut them then." While the lower court held that this work not within the contract was voluntary on the part of the claimant, the record clearly indicates that the walls had to be cut and rubbed down to comply with the State's requirements that the clearance should not exceed the thickness of a " nickel " and that claimant was specifically directed to do this extra work. True, there was no formal contract but we may not assume that having been directed to cut the walls it could fairly be assumed by the State that claimant waived any right to compensation. The court states in its opinion that " even assuming that claimant had been directed to perform such work, not a part of its contractual obligation, it could not recover " and cites *Borough Construction Co.* v. *City of New York* (200 N. Y. 149) and quotes from the opinion there at page 157, " if the thing required is clearly beyond the limits of the contract, the contractor may not even under protest do it and subsequently recover damages." In the *Borough Construction Co.* case, the court allowed some items of this extra work and refused to allow other items which were wholly disconnected with the contract work. Here, the cutting back of the wall was necessary to the proper hanging of these plumbing fixtures and an integral part of the installation. Any required extra work must necessarily be beyond and without the contract's

specifications or result from a breach of the contract on the part of the owner. The court below further contends that this work of cutting back could have been performed by common labor and at a less cost than having the same work performed by plumbers. It appears from the testimony that it was impracticable to use common laborers to do the cutting and the plumbers to handle the fixtures. There was no definite depth to cut. The fixtures necessarily had to be hung by a plumber and the union rules so provided. From the evidence it would seem that the workmanlike way of hanging these fixtures was to have the entire work done by plumbers, who were responsible for the finished job. If both laborers and plumbers were to do this work, we would have a situation that while the plumber performed his work of fitting the fixture, the laborer would be idle, and while the laborer chipped and rubbed down the wall, the plumber would be idle. From all of the evidence, the only fair conclusion that may be reached is that this extra work was performed pursuant to a specific direction of the State and that claimant was entitled to be compensated therefor. Claimant's work under its contract was completed and accepted by the State. The general construction contractor had abandoned operations. This extra work of cutting the walls was necessary and the testimony of claimant's representative clearly indicated that "We expected to get paid for it." The total amount of damages which is undenied by any testimony in the record, amounts to $654.20 and that this is the reasonable value of the work is unchallenged.

The second item of the claim relates to the State's failure to supervise properly the progress of the work of the general construction contractor and the failure to compel the usual and customary co-ordination of such work wherein claimant's work was dependent upon such progress and co-ordination. The fixtures claimant was required to install were of several different types and were required to be located in various buildings. Obviously, before these fixtures could be installed it was necessary for the general construction contractor to perform his work, and the lower court so found. On October 15, 1934, and again on December 4, 1934, the general contractor abandoned its construction work. On January 4, 1935, the State canceled its contract and notified its surety. However, the surety did not commence completion of the work until March, 1935, about fifty days after it was notified of the general contractor's breach. The failure of the State to supervise properly the progress of the general construction contractor's work unques-

tionably delayed the work of the claimant. Claimant's contract, as well as the contract of the general construction contractor, called for completion by March 1, 1934. It was not within the contemplation of the claimant and the State at the time the contract was executed that the progress of the work would be delayed for a period of upwards of twenty-one months. It is well established that the State is liable for the damages occasioned a contractor by the default of a general contractor who undertakes contemporaneously to perform and complete work on the same completion date. (*Afgo Engineering Corp.* v. *State of New York,* 244 App. Div. 395, affd. 268 N. Y. 716; *Smith & Sons Construction Co., Inc.,* v. *State of New York,* 266 App. Div. 886.)

The completion of claimant's plumbing installation depended upon the completion of the general construction contractor's work. From the record it appears that little general construction work was performed between September 19, 1934, and March, 1935. Even after December 4, 1934, when the general construction contractor finally abandoned all contract work, the State extended the time within which action would be taken under the "seven days' notice" until January 4, 1935, when it appears the surety company was called upon to proceed to complete the work, though it was not until March, 1935, that the surety company commenced operations. Claimant protested to the State inspector and notified him that the delay was costly. The uncontradicted testimony of claimant's witness is that had there been no abandonment by the general construction contractor, claimant would have completed its work by March 1, 1935.

The basis of claimant's damage is the cost of maintaining a superintendent, a foreman and a maintaining helper on the job from March 1, 1935. Claimant's contract provided that it shall have, when requested by the chief engineer "a competent superintendent, and at all times a competent foreman constantly at the site, from commencement until completion, who will receive instructions in the absence of the contractor or his superintendent." No request was made by the State's chief engineer that claimant have a superintendent on the job for the entire period of the contract, nevertheless, the contract itself required a foreman.

While the court found that the State's chief engineer did not request a superintendent during the full period of the contract, it is apparent that the contractor followed good construction and engineering practice. The superintendent was also his engi-

neer and in charge of claimant's operation. He was prepared at all times to proceed with his work upon a resumption of the general construction work. It would seem that it was necessary for claimant to maintain a working organization. He did reduce his force and these men, so retained, installed fixtures when possible. While the State's chief engineer did not specifically request a competent superintendent, there is nothing in the contract that would prevent the claimant from employing such superintendent in order to complete his contract in a workmanlike manner. Claimant alleges that it sustained damages for the maintenance on the job of a superintendent from March 1, 1935, to July 11, 1935, a foreman from March 1, 1935, to December 5, 1935, and a helper for the same period of time. In other words, its claim covers only the period from March 1, 1935, the date claimant would have completed its work had there been no delay, to December 5, 1935, the final completion date.

From the evidence it appears that the State breached its contract with the claimant in requiring the cut back in the concrete walls, to claimant's damage in the amount of $654.20, and that through the delays caused by the breach on the part of the State, the claimant sustained further damage in the sum of $5,350.56, for all of which it should recover, with interest from February 10, 1936, the date of payment of claimant's final estimate.

The judgment of the Court of Claims should be reversed upon proper findings to be made by this court.

All concur.

Judgment reversed on the law and the facts, with costs, and judgment directed in favor of claimant against the defendant for $6,004.76, with interest from February 10, 1936.

The court reverses findings Nos. 9, 10, 12, 13, 14, 15, 17, 18 and 20 and disapproves conclusions of law Nos. II, III, IV and V of the decision.

The court makes the following findings: Nos. 5, 10, 19, 23, 24, 25, 27, 28, 30, 35, 36, 39, 40, 44, 46, 47, 48, 50, 51, 53, 54, 55, 58, 59 and 60, and approves conclusions of law 1 to 5, inclusive, of claimant's requests to find.

The court reverses findings Nos. 9, 10, 12, 13, 14, 15, 17, 18, 19 and 20, and disapproves conclusions of law first, second and third of respondent's requests to find.