ENDRES PLUMBING CORP., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28126.)

Court of Claims, March 8, 1950.

*M. Carl Levine* and *Albert Foreman* for claimant.

*Nathaniel L. Goldstein*, Attorney-General (*Arthur W. Mattson, Burns F. Barford, Philip A. Paulson* and *Lawrence H. Wagner* of counsel), for defendant.

LOUNSBERRY, P. J. In December of 1940, the claimant entered into a contract with the State of New York to install the plumbing in buildings 3 and 4 of a new State hospital to be constructed near Deer Park, Long Island. The completion date specified in the contract was June 1, 1942. At about the same time, a contract for the general construction was let to Amsterdam Construction Company, also to be completed by June 1, 1942.

Claimant complains that the Amsterdam company failed to progress its work thus making it impossible for claimant to complete its contract until September of 1944. As a result, it alleges, it was unable to perform the plumbing work in the orderly, expeditious manner it had contemplated and thereby had considerable increased labor and overhead expense, for which it now seeks to charge the State.

Unquestionably, the general construction work overran the completion date. Plaster and tiling was not entirely complete in building 4 until July 25, and in building 3 until September 26, 1942. With this, however, the general construction was 97% complete and nothing remained to prevent claimant from setting fixtures, the last step in its work, except final tests and adjustments. By its own admission claimant had contemplated and could then have completed the fixture installation in twenty working days, or before November 1, 1942, by using a force of twenty men. Actually, it used no more than five and thus carried the work through December. Even then, it lacked certain vital equipment which it was unable to secure and install until January and March of 1944.

There was one other source of delay. The State did not let the sewer and water line contract until October 27, 1942, and

these services were not available until February, 1944. Until then, claimant could not run final tests and adjustments. Nothing in its contract required it to remain on the job meanwhile, however, or even to forego final payment until completion of tests. All that was reasonably required was a return to the scene for certainly no more than one month to complete the work. It did, in fact, string along the final adjustments, which could have been made by two men in two weeks, over a six-month period, but did so at its own election and over the State's protest.

From the foregoing it is apparent that no more than five month's delay, from June 1 to November 1, 1942, plus an additional month for tests and adjustments, can reasonably be attributed to lack of progress in the general construction and in the furnishing of connections. During the rest of the period of the claimed delay, claimant was either working on another job (it spent only about two weeks of 1943 at the Deer Park project), or was performing work which could have been performed sooner by use of an adequate force, or had equipment been available. It is significant that after May, 1942, when union rules were changed to forbid a foreman in charge of more than four men to work with tools, claimant never operated with more than a working foreman and four men, regardless of its original progress schedule or of the needs of the work.

There is no evidence in the record of any specific unreasonable or inefficient conduct by the Amsterdam company, or any active interference by it with claimant's work, or that it used other than sound and accepted construction methods. Likewise, there is no evidence that the State at any time arbitrarily interfered with the work of either contractor, or imposed any changes of specifications or other unanticipated demands or conditions, or in any way caused the delay, so far as the fixture installation is concerned. It did contribute to the delay in running the tests, but the claimant itself was not able to run them until it installed certain mixing valves in January, 1944, which were not previously available. The tests were run soon thereafter. Hence, the claimant is scarcely in a position to complain of this particular delay.

The claimant's contention seems to be that the State is automatically liable if through a delay by one of its contractors, another is delayed. The cases are not entirely harmonious but we are satisfied that such is not the law. The law is, rather, that there is no automatic liability, but that the State may become liable for delay where it furnishes misleading specifications, requires or permits substantial changes in the speci-

fications or procedures, arbitrarily interferes with the progress of the work or unreasonably fails to progress it, takes some action not contemplated by the parties to the contract, or otherwise actively or negligently causes an unreasonable delay, resulting in damage to a contractor. Reference to some of the decided cases will illustrate:

In *American Bridge Co.* v. *State of New York* (245 App. Div. 535 [1935]), involving the construction of a bridge, the foundation contractor encountered serious difficulties, thus delaying the claimant who was the superstructure contractor. Although it was obvious that the delay would be prolonged, the State nevertheless ordered the claimant to proceed with the fabrication of its steel, which then had to be stored out-of-doors until it could be used. As a result, it had to be repainted at considerable additional expense to the claimant. The court allowed a claim for damages on the ground that the damages arose from active interference by the State rather than merely from delay.

In *Cauldwell-Wingate Co.* v. *State of New York* (276 N. Y. 365 [1938]) involving the erection of the State Office Building in New York, the claimant, who held the superstructure contract, suffered a long delay by reason of the inability of the foundation contractor to complete its work on schedule. The specifications for the foundation prepared by the State indicated that it could be completed in about three weeks and the foundation contract so required. Claimant based its progress plans on the assumption that this would be done. The foundation specifications proved to be so utterly misleading and inadequate, however, that some nine months were required for completion. The court allowed a claim for damages by the superstructure contractor on the ground that while it assumed the risk of delay by the foundation contractor in the performance of its contract according to the specifications supplied, it did not assume the risk of delay resulting from defective specifications. The court at page 372 said: " The Cauldwell Company, by the contract provision above quoted, accepted the contingency of delay in the execution of the foundation contract, but only such delay as was occasioned in the performance of that contract, according to plans and specifications."

In *Hayes Constr. Co.* v. *State of New York* (254 App. Div. 915 [1938], affd. 279 N. Y. 755) a highway construction contractor sought damages for delays by a town in completing certain bridges, and by the State in failing to remove certain structures,

poles and hydrants. The court disallowed the claim, holding that the delays were related to the contract and were within the contemplation of the parties; that they were not unreasonable, and that they were not caused by the direct interference of the State.

In *Waples Co.* v. *State of New York* (178 App. Div. 357 [1917]) the claimant had contracted to clean and waterproof the stonework of the State Capitol building, the method of waterproofing to be proposed by the contractor and approved by the State. The claimant complained of delay while the State was testing various waterproofing methods, and also while work was suspended by State order because it interfered with an impeachment trial which was proceeding in the building. The court disallowed the claim with respect to the waterproofing on the ground that the delay was reasonable and within the contemplation of the parties but allowed the claim for suspension during trial on the ground that this type of delay was not related to the contract and was not within the contemplation of the parties.

In *Baker Co.* v. *State of New York* (267 App. Div. 712 [1944]) the State let a contract to one Kantrowitz for the construction of a powerhouse and concrete tunnels, in connection with a new State school, and a contract to the claimant to install heating equipment and a piping system therein, both to be completed on the same date. Installation of the piping system in an orderly and continuous manner was vital to the claimant's schedule and the claimant reasonably assumed that the tunnels would be constructed in a continuous fashion. Over claimant's protest, the State permitted Kantrowitz to build them in disjointed sections, which completely disrupted claimant's schedule and also subjected claimant to considerable water damage. Kantrowitz, proceeding in this fashion, overran the completion date by eleven months. The court held the State liable to the claimant for its delay and extra expense on the ground that by permitting Kantrowitz to proceed in a disjointed manner and compelling claimant to proceed in the same manner, it had actively interfered with claimant's work and prevented it from using customary economical methods.

Two cases which on their face are not wholly consistent with the foregoing are *Weil Plumbing Corp.* v. *State of New York* (267 App. Div. 247 [1943], affd. as to delay claim 294 N. Y. 6), and *Smith & Sons Constr. Co.* v. *State of New York* (266 App. Div. 886 [1943]). In the *Weil* case (*supra*), the court, in allowing a delay claim, made the broad assertion that the State is

liable to a contractor who is delayed by default of the general construction contractor. The facts reveal, however, that the general contractor actually abandoned the work and that there was considerable delay by the State before it took any action to have the work completed. They also reveal that the claimant's contract required him to maintain a force on the job at all times so that he was compelled to maintain such force even when he could accomplish little work. The situation is, therefore, distinguishable from the present case where there was no abandonment of the work and where there was no requirement that the claimant maintain any force on the job except when actually performing work. In the *Smith* case (*supra*), two successive plumbers abandoned their work, thus delaying the general contractor. An award for delay was made without any discussion of the legal principles involved. Again, however, the situation differed considerably from that in the present case.

*Afgo Engineering Corp.* v. *State of New York* (244 App. Div. 395 [1935], affd. 268 N. Y. 716), cited by the claimant, and also the *Weil* case (*supra*), does not appear to be relevant. The case involved interpretation of a contract requirement as to the provision of temporary heat after the completion date and the court simply held that such provision was not required by the contract and that the claimant could recover for additional heat furnished.

In the interest of considering first the general principles applicable to the situation, we have thus far deliberately refrained from any reference to the following significant clauses contained in the contract between the claimant and the State:

" 85. If the Contractor is delayed in the completion of his work by any act or neglect of the State, or by changes ordered in the work, or by any cause which the Chief Engineer shall deem to justify the delay as being beyond the Contractor's control, then the time of completion shall be extended for such reasonable time as the Chief Engineer may decide."

" 87. No charges or claim for damages shall be made by the Contractor for any delays or hindrances, from any cause whatsoever, during the progress of any portion of the work embraced in this contract. Such delays or hindrances shall be compensated for by an extension of time as above provided."

These provisions would seem to constitute a complete bar to the claim since the claimant did receive extension of time

and was not penalized for its failure to complete its work on schedule, as it could have been under another clause of the contract. In a number of cases, however, a contractor has won damages for delay in the face of these or similar contract provisions. Provisions of a like nature were present in the *American Bridge* and *Cauldwell-Wingate* cases, above cited. In the *Cauldwell-Wingate case* (276 N. Y. 365, *supra*), the court held that such clauses have no reference to delays and damages caused through the direct interference and misrepresentations of the State. In the *American Bridge* case (245 App. Div. 535, *supra*), the court said that such a clause was intended to apply to inaction forced upon one contractor by the delays of another and did not protect the State against the consequences of its own affirmative action.

In *Mack* v. *State of New York* (122 Misc. 86 [1923], affd. 211 App. Div. 825) the court held such a clause a complete bar to a claim where there was no evidence of active interference by the State. In *Wright & Kremers, Inc.*, v. *State of New York* (238 App. Div. 260 [1933], mod. 263 N. Y. 615) the Appellate Division likewise held such clause a complete bar, but on appeal this holding was modified to the extent of allowing damages for delay by the State in clearing the site. The Court of Appeals gave no reason for this modification but it would appear to be based on the active interference doctrine.

In *Brady & Co.* v. *Board of Educ. of City of N. Y.* (222 App. Div. 504 [1928]) a similar clause did not prevent recovery by the plaintiff where it appeared that the defendant board of education so delayed clearing the site that the plaintiff was delayed in its work for three years. The court said that such a clause does not cover delay sufficiently unreasonable to strike at the heart of the contract and justify the contractor in abandoning it.

*Johnson* v. *City of New York* (191 App. Div. 205 [1920], affd. 231 N. Y. 564) and *Mechanics' Bank* v. *City of New York* (164 App. Div. 128 [1914]), both concerned a provision in sewer construction contracts permitting the president of the borough to suspend the work if he deemed such action in the best interests of the city, without compensation to the contractor other than an extension of time. In the first case, such a suspension occurred by reason of failure of the city to appropriate funds to pay for necessary engineering and inspection work on the project. The court held this failure a violation of the city's duty under the contract and not a proper

ground for suspension without compensation. In the second case, the suspension occurred for the purpose of an investigation of materials. The court held this suspension to be reasonable and the plaintiff to be bound by the provision for suspension without compensation.

In the light of the foregoing decisions and of the facts which we have shown, we conclude that the present claim is barred both under the general principles of law applicable to the situation and under the above-mentioned clauses of its contract. Upon either consideration, we are satisfied that recovery may be allowed only upon evidence of active interference in some form by the State, or delay so unreasonable as to constitute an abandonment of the original contract. There is no evidence here of any such interference and the total delay of six months was not so unreasonable as to constitute an abandonment.

We recognize that the delay in providing sewer and water connections was caused by the State, but, as we have pointed out, the claimant was not prepared to run the tests at any earlier date. Furthermore, we are not satisfied that claimant suffered any damage from this particular delay. In contracting to do the work, it certainly estimated the time and expense for final tests and adjustments. These proved to require no more than an ordinary amount of either. Hence, we do not see that the claimant suffered any actual damage in this respect.

Therefore, the within claim must be dismissed on its merits.

Findings of fact and conclusions of law in conformity with the within opinion may be filed fifteen days from the date hereof, otherwise this memorandum will be considered the decision.

Let judgment be entered accordingly.