Richard S. Heller, J.
This claim arises from a contract between the Department of Mental Hygiene and the claimant, whereby the claimant was to furnish material and perform labor for sanitary work for additions and alterations to Building I at the Rome State School, Rome, Hew York. The total contract price was $31,822.
The claim seeks recovery of the balance due on the contract price of $1,722, with interest thereon from January 8, 1957 to February 18, 1957 when judgment for the sum of $1,722 was entered pursuant to an order of severance herein. Claimant further seeks recovery of the sum of $8,563.18, with interest thereon from January 8, 1957, alleging that the claimant was damaged in the principal amount by the State’s interference with claimant’s work and the State’s failure to control the progress of the work and co-ordinate the various contractors working on the job, with consequent delay to the claimant.
All of the work to be performed at Building I at the Rome State School was covered by four separate contracts. The general construction contract was with the John J. Harvey *593 Company, Inc., dated July 29, 1954; the heating contract was with the O’Shea Supply Company, Inc., dated July 28, 1954; the electrical contract was with Langdon & Hughes Construction Corp., dated July 28, 1954; and the sanitary work was covered by the contract involved in this claim, dated July 30, 1954. Each of the contracts required completion of the work no later than January 1, 1955.
Claimant’s contract contained a provision under general description reading: “ Visit to site — As there may be various conditions at the site that do not show on the accompanying drawings, it is important for all bidders to visit the site and acquaint themselves with the existing conditions and to take these conditions into account in preparing their proposals.” The general description of the contract also contained the following provision: “Procedure — Progress of the work shall be
co-ordinated with the work of other contractors so as to maintain proper service facilities and utilities for the functioning of the existing building until permanent new connections are made.” The contract also contained a provision that: “ The work shall be done in sections if necessary commencing work or discontinuing operations as directed by the State Architect. The work shall be executed at such time and in such a way as to cause the least inconvenience to the State, and with proper consideration for the rights of other contractors. The contractor shall keep in touch with the entire operation and install his work promptly.”
The claimant did not visit the site prior to entering into contract. Prior to the letting of the contract and during the construction period, Building I was utilized for the housing of male adult imbeciles and idiots. The four wards involved had a total rated capacity of 280 people but were being occupied by between 450 and 470 patients.
Early in August, 1954 claimant spoke on the telephone to the representative of the State of New York in charge of the construction project and claimant was informed that it could do no work on the project at that time as the general contractor had not started work and claimant could not go into the existing facilities because the institution would not permit it. Early in October the claimant again had a telephone conversation with the State representative in charge of construction and claimant was informed that the general contractor would commence excavation work shortly and claimant could probably start work later in the month. Claimant was further advised that it could not start work in the existing facilities since those existing facilities could not be touched until the new additions were built.
*594 So far as the new additions were concerned, it was necessary for the general contractor to complete work prior to any work by the claimant and in regard to the alterations in existing facilities, proper construction required that the claimant perform some work and then work had to be performed by the general contractor and then further work by the claimant.
About October 18, 1954 a representative of the claimant went to the Rome State School and met with the representative of the State in charge of the construction project and two representatives of the Rome State School. By that time the general contractor had completed his excavation and the pouring of footings and foundations but then apparently had essentially stopped work because of his inability to find matching face brick as specified in the contract and to obtain stone for the walls,
At that conference on October 18, 1954 it was agreed among representatives of the institution and the State representative in charge of construction and claimant, that claimant could commence work on existing sanitary facilities on the first floor of one wing designated as “A” wing.
Thereafter work continued sporadically. By about January 1, 1955 the general contractor had completed enough work on the addition to the south wing so that the claimant could commence installation of sanitary facilities. Claimant was unable to commence work on sanitary facilities on the addition to the north wing until about February 10, 1955.
The inspection report of the State representative indicates that claimant’s work was ready for final inspection on March 1, 1956 and that a final inspection was had on that date. There was a final acceptance of claimant’s work on September 14,1956 and the final certificate is dated January 4, 1957.
Claimant and the general contractor both testified that in bidding on the contracts they contemplated working on all locations where work was to be performed at once and at the same time. Claimant urges that the refusal of the State to permit this was an interference with the performance of the contract resulting in damage to the claimant for which it is entitled to recover.
The court finds that under the conditions existing at the time of the bids and the contracts it could not have been within the reasonable purview of the parties that work should be performed in such a way as to remove from service more-than one of the four sets of existing sanitary facilities. That the work could be performed in such a manner was quickly and easily established as soon as a representative of the claimant, the State *595 representative in charge of construction and representatives of the Borne State School sat down together and considered the problem. The court finds that the limitation of the claimant to interference with the use of existing sanitary facilities so that only one such facility was out of use at any one time was reasonable, within the purview of the contract and did not constitute a compensable interference with claimant’s performance of the contract.
Under circumstances such as these, however, the State has a duty to exercise due diligence to co-ordinate the work of the various contractors. (C. F. Mentzinger’s Son, Inc. v. State of New York, 278 App. Div. 1019.) The State may become liable for delay where it unreasonably fails to co-ordinate and progress the work. (Endres Plumbing Corp. v. State of New York, 198 Misc. 546, affd. 285 App. Div. 1107; Weil Plumbing Corp. v. State of New York, 267 App. Div. 247, affd. 294 N. Y. 6 as to delay.)
In every situation involving related contracts where co-ordination and supervision of work is required and delay is encountered, the State must always make a choice between exercising its right to terminate the contract of the delaying party and obtain another contractor on the one hand, and doing its best to avoid the further delay that would be involved in such a procedure on the other hand. But to avoid liability, the State must at least show some effort to carry out its obligation to see that the work progresses properly and is properly co-ordinated within the purview of the contract. Here the State failed in this obligation and unreasonably failed to supervise, co-ordinate and see to the progress of the work.
Claimant’s proof as to damages is made up of six separate items. The first of these items is described as “ supervisory trips and expenses to job after January 1, 1955 ” and is in the total amount of $2,427.62, with the major item being a charge for 31 days of supervisory trips at $50 each. The balance of the amount is made up by a listing of actual disbursements for such things as transportation expense, hotel charges, meals, communication expense, etc. Nowhere, however, does the claimant make any effort to describe how these charges resulted from delay. The mere fact that they occurred after January 1,1955-, does not establish that they were not a normal part of the contract which would have occurred whether the services were performed prior to January 1, 1955, or after January 1, 1955. Apparently these were normal and necessary supervisory trips which were in no way related to the delay but were an integral part of the job regardless of when the job was to be performed. Thus had the State co-ordinated the work and the general con *596 tractor proceeded with his. work, so far as the record is concerned, these supervisory costs would have been involved in any event in the period from July 30, 1954 to within a reasonable time after January 1,1955. The court finds that these damages have not been established by the claimant as the result of the State’s breach of contract.
The second item is for additional fire insurance for a period of two years at $39.20 for each year making a total of $78.40. This expense is directly related to lapse of time and is attributable to the delay resulting from the State’s breach of contract.
The third item is stated to be additional foreman’s wages in the total amount of $4,432.41. Again the claimant has failed to establish by a fair preponderance of the evidence that this expenditure would not have been involved in the performance of the contract regardless of the time when the services were performed. The record shows that during this period this claimant was performing another contract on another building at the Borne State School. Claimant was not in any way required to maintain men on the job when there was no work to be performed. So far as the record shows, there is nothing to establish that this was an additional expense resulting from the delay and the State’s breach of contract as was true in Weil Plumbing Corp. v. State of New York (267 App. Div. 247).
The fourth item of damage is described as “ additional journeymen ’s wages ’ ’ and represents a charge of $1 a day plus insurance of 10.31% for 125% days, making a total of $138.58. This resulted from a salary increase of $1 per day granted by union agreement beginning May 1, 1955. This is a proper item of damage resulting from the State’s breach of contract. The claimant could not have anticipated that this contract would extend beyond May 1, 1955 with an increase in pay at that time to its necessary employees.
The last two items of the claim for damage are 10% of the first four items charged for overhead and 10% of the resulting total charged for profit. The uncontradicted testimony in the record is- that this is a normal and standard method of computation in the industry. On this uncontradicted testimony the court finds that the claimant is entitled to those items on the amount of damage actually proved as attributable to the delay resulting from the State’s breach of contract. Those two items consist of $78.40 for additional fire insurance and $138.58 for increased wages.
The court finds that the claimant is entitled to a judgment for interest on the sum of $1,722 from January 8, 1957 to *597 February 18, 1957 and for the sum of $262.66, with interest thereon from January 8, 1957 to the date of entry of judgment herein.
The foregoing constitutes the written and signed decision of this court. Let judgment be entered accordingly.