Thomas Bussell Jones, J.
In 1967 the plaintiff New Again Construction Company entered into a written contract with the City of New York to rehabilitate Litchfield Mansion, a famous architectural landmark building located in Prospect Park, Brooklyn. This action is brought by the company to recover damages for extra work performed on the mansion. The company also claims damages for financial losses sustained when the city failed to co-ordinate the work of plumbing and electrical contractors on the job, in good time.
The parties have waived a jury trial on all issues of law. Both sides have stipulated that, in the event plaintiff prevails at law, the remaining issues of damages will be determined by a jury. The contract in dispute, 150 pages long with voluminous addenda, was prepared by the City of New York. The *944 contract was carefully drawn to safeguard the city against unfair claims or unwarranted litigation. Nevertheless, articles 27 and 53 of the agreement permitted contractors to assert claims against the city for “ Disputed Work ” or “ Extra Work ” provided certain strictly defined procedures were followed. New Again, as the general contractor, was engaged to perform the restoration work on the mansion, including carpentry, plastering and painting. The electrical and plumbing work on the building was to be assigned to other prime contractors. The city employed its own resident architect to co-ordinate the work of the various building trades. The architect was in logistic command of the project. His on-site duties were to monitor and approve the work of all trades; and, in effect, to “ orchestrate ” the rehabilitation of the mansion to completion.
On November 13, 1967 the city awarded the contract for general construction work on the mansion to the plaintiff. On March 1, 1968, the company was notified to begin its work not later than 10 days after March 11, 1968, i.e., by March 21, 1968. The contract required the company to complete its work within 120 calendar days, i.e., by July 18, 1968. Notwithstanding these specific requirements, three months elapsed before the city engaged the electrical contractor. This delay made it impossible for the plaintiff to comply with the original 120-day completion schedule. By continuing the restoration work both parties impliedly abandoned the original completion date. That date was thereby automatically advanced to accommodate the time already lost because of the city’s delay. The plaintiff took the precaution, however, of submitting a written application to the city for an extension of time, and pointed out that the electrical contract had not been let in sufficient time to permit compliance with the original 120 days’ completion requirement. The city acknowledged that the three-month delay resulted from its own failure to select a contractor to perform the electrical work. The city may not now reject the company’s claim to recover damages caused by its own neglect (cf. Thilemann v. City of New York, 82 App. Div. 136). The city may not now impose the result of its own default upon the other contracting party (cf. Johnson v. City of New York, 191 App. Div. 205, 208, affd. 231 N. Y. 564), nor will the law allow the city to interpose its own breach of contract as a defense to an action on the contract (Patterson v. Meyerhofer, 204 N. Y: 96, 101).
On September 6, 1968, after work had begun, the plaintiff submitted another request for the postponement of the completion date to September 5,1968, citing as the reason for its appli *945 cation that: “ most of our work, plaster, painting, flooring could not begin until after the electrician had finished his work ” and saying that “ except the items of claim which are hereby reserved and set forth in the annexed bill of particulars * * * as the electrician is still not finished with his work.”
The city’s representative crossed out the word “ except ”, and insisted that plaintiff submit a new application for an extension of the completion date which excluded the reservation of its claims. The extension of time application would not otherwise have been approved and thus plaintiff would have been denied the earned progress payments on account which he then sought. When plaintiff demurred to the city’s demand that its claims for extras and other losses be waived the spokesman for the city gave oral assurances that the waiver language was meaningless ; nothing more than pro forma procedures. At trial, the counsel for the city denied that anyone might give such assurances or bind the defendant, pointing to statutory and contractual provisions which specifically forbade such practice. This court does not reach the issue whether the city’s architect and engineer might nevertheless have done so, for the benefit of the defendant.
The unconscionable conduct of the city’s agents who overreached the company by insisting on an abandonment of its legitimate claims instead of invoking the procedures established under articles 27 and 53 of the agreement, estop the city from now advancing these waivers as a bar to the action. The same legal principles will be applied to all later claims for extra work and damages, to the extent that same were caused by the city’s delay in co-ordinating the work of all building trades, as required in the contract. It is noted that in regard to each application, the city asserts that the final extension granted to the company did not revive any of the claims set forth in the bill of particulars annexed to the last request. The city’s counsel insists that, even if the granting of the extension does not constitute a sufficient quid pro quo for the waivers and releases, the writings themselves constitute the requisite consideration contemplated by section 15-303 of the General Obligations Law. This section of the General Obligations Law is not applicable. In Buffalo Elec. Co. v. State of New York (9 A D 2d 372) the Appellate Division held that an intent to release a claim gratuitously will not be inferred unless the intent to do so is clearly and unequivocally expressed and where unilateral mistake is present. This statute was not enacted to bar legitimate claims but to facilitate release of liability with *946 out any exchange of consideration (cf. Practice Commentary by Ralph D. Semerad, McKinney’s Cons. Laws of N. Y., Book 23-A, p. 598).
Whether the several applications for extension of time constitute waivers of claims will “ depend [s] on the intention of the parties to be deduced from the documents and circumstances of their execution ” (Mallad Constr. Co. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 292). No negotiations were permitted to dispose of the plaintiff’s known claims. To push the work forward the city agents concerned themselves solely with the form on which the request was to be made and obscured any fault on their part by insisting upon the renunciation of the contractor’s right to assert his claims. The contract between the parties makes no reference to any such form. Nor does the contract authorize the city to demand, as a condition for the extension of time, that the plaintiff waive its legitimate claims. Such penalty terms will not be implied. A release is a contract, governed by the usual rules of construction. Despite the clear meaning of the words of waiver employed in these standardized clauses, “the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form ” (Mangini v. McClurg, 24 N Y 2d 556, 562). These parties, certainly the plaintiff, never intended that an application for extension should be automatically converted into an actual release or waiver. “ It is of the essence of waiver that there be an intentional relinquishment of a known right ” (American Bridge Co. v. State of New York, 245 App. Div. 535, 541).
The facts disclose that the city representatives and the architect failed to co-ordinate the work of the several building trades as required, and breached the contract with the plaintiff. The city “ cannot now, and for its own benefit, avail itself of an alleged waiver provision in the very same contract * * * the tremendous advantage and protection given the [city] by its own specifications and proposals against the contractors may not be used * * * to thwart the rights of the contractors ” (A. E. Ottaviano, Inc. v. State of New York, 52 Misc 2d 998, 1001-1002, mod. 32 A D 2d 87).
In Shore Bridge Corp. v. State of New York (186 Misc. 1005, 1012, affd. 271 App. Div. 811), the court reasoned that “It-is unreasonable to suppose that the parties intended to enter into obligations providing for the performance of the work by the claimant under a penalty for nonperformance within a given *947 period which yet left it optional for the State to facilitate or retard .such work at its pleasure or discretion. Any other construction would destroy the mutuality of the agreement and put practically in the power of one party to defeat the performance by the other.” (See Stenton v. Jerome, 54 N. Y. 480; Matter of New York Tit. & Mtge. Co. [Freedman Home), 150 Misc. 827; Adrico Realty Corp. v. City of New York, 250 N. Y. 29.)
Equity will not permit the city to benefit from its own lack of good faith, nor from its untimely direction to plaintiff to commence work despite the fact that the prerequisite electrical work had not yet been assigned, far less commenced. “ There is neither justice nor equity nor honor in the [city’s] position in this case. It is attempting to accomplish by subterfuge what no private citizen would be permitted to do. In the performance of its contracts the [city] should be held to the same accountability as would one of its citizens and it should be governed by the rules of common honesty and fair dealing binding on all individuals.” (Starling Realty Corp. v. State of New York, 261 App. Div. 363, 370, affd. 286 N. Y. 272.) The defense of waiver and release is accordingly dismissed.
The remaining defenses of defendant are disposed of as follows:
(a) Payment (first defense) has not been established, and is dismissed.
(b) The second, fourth, fifth and seventh defenses of failure to make protest, give notice to the commissioner, furnish to the resident engineer detailed statements of damage being sustained and of extra work being required by reason of defendant’s conduct, are also dismissed. Defendant’s active dissuasion of plaintiff and refusal, as early as September 19, 1968, to accept any reservation of claim of potential damage, compounded by defendant’s insistence that such notice or reservation be eliminated, bars such defenses. Our courts have consistently refused to countenance attempts by city, State or other governmental agencies to escape the consequences of their unreasonable delays; their interference in the progress of construction jobs and their bad faith in the performance of their undertakings by reliance upon “no damage and immunity clauses ” contained in their contracts. (Endres Plumbing Corp. v. State of New York, 198 Misc. 546, affd. 285 App. Div. 1107; Snyder Plumbing & Heating Corp. v. State of New York, 21 Misc 2d 591; Brady & Co. v. Board of Educ., 222 App. Div. 504; Ippolito-Lutz, Inc. v. Cohoes Housing Auth., 22 A D 2d 990; *948 Norman Co. v. County of Nassau, 27 A D 2d 936; and Tully & DiNapoli v. State of New York, 34 A D 2d 439.)
(c) The sixth defense, i.e., plaintiff’s failure to submit a final requisition together with a verified statement of claims inclusive of those due to delay, is dismissed for the reasons above stated. Moreover, plaintiff did present a bill of particulars setting forth all of its items of damage with its verified bill of application for a final extension.
The third defense has been reserved for separate discussion, since plaintiff failed to avail itself of the remedy accorded to it against a co-contractor for that portion of its damages attributable solely to the co-contractor. Article 12 of the cop-tract provides that the contractor (plaintiff) shall have no claini against the city for damages occasioned through the act or. omission of any other contractor on the job. Such claim must be asserted against the other contractor whose contract with the city contains the same standard clause requiring reimbursement of a “ cocontractor for all # * * damages and to indemnify and hold the City harmless from all * * * claims.”
To the extent that the electrical contractor used improper tools or made unnecessary cuttings and breaks in the walls than required, the electrical contractor, not the city, is liable to plaintiff for the extra claims attributable to such poor workmanship, provided that the breaks in the walls were not due to the city’s failure to indicate the area of the walls to be cut. The electrical contractor should have been joined as a defendant in this action so that the rights of all of the parties could have been properly determined once and for all. (See People ex rel. Wells & Newton Co. v. Craig, 232 N. Y. 125; Peckham Road Co. v. State of New York, 32 A D 2d 139, affd. 28 N Y 2d 734.)
This action will be set down for proof and determination of plaintiff’s damages on February 15,1974 before a new jury to be selected by the parties.