**BRANKO INTERNATIONAL, INC., Plaintiff,**

v.

**SAUDI ARABIAN AIRLINES, Defendant.**

**No. 87 Civ. 7406 (RWS).**

United States District Court, S.D. New York.

Jan. 11, 1989.

Bruno Schachner, New York City, for plaintiff.

Chadbourne & Parke, New York City (Henry J. Oechler, Jr., Jose Luis Murillo, Jr., of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Branko International, Inc. ("International") has moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment on its claim for unpaid commissions and pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the counterclaim of defendant Saudi Arabian Airlines ("Saudi") for accrued interest on unpaid freight charges. Saudi has moved for summary judgment on its counterclaim. For the reasons set forth below, Saudi is granted summary judgment dismissing International's claim for commissions, and Saudi's counterclaim for interest is dismissed.

### The Parties

International is the assignee of the accounts receivable of Branko Forwarding Corp. ("Forwarding"). Forwarding was an air cargo agent that arranged freight transportation on various airlines, including Saudi, pursuant to a cargo agency agreement with the International Air Transport Association ("IATA"), a trade association of almost all the world's international airlines. In this capacity, Forwarding performed duties for shippers similar to those travel agents perform for passengers, earning a commission for its services payable by the carrier amounting to 5 percent of the total freight charges it arranged.

Saudi, a corporation wholly owned by the Kingdom of Saudi Arabia ("Saudi Arabia"), is Saudi Arabia's national airline and a member of IATA.

### The Facts

In the mid–1970s, Saudi Arabia, through its Ministry of Defense and Aviation ("MODA"), began constructing a new international airport at Riyadh (the "Project"). MODA retained Arabian Bechtel Company Limited ("Bechtel") as contract administrator, with responsibility for approving bills for services in connection with the Project. MODA also hired Seatrain Gulf Services Ltd. ("Seatrain") to oversee the shipment of equipment and material used in the Project. To handle shipments originating in the United States, Seatrain subcontracted with Barsac Logistics, Inc. ("Barsac"). Barsac in turn hired Forwarding as the cargo agent for freight shipped from the United States to Saudi Arabia.

Forwarding claims it originally shipped freight for the Project on airlines other than Saudi, allegedly because these airlines charged lower rates. Pursuant to Bechtel's request, Forwarding in late 1983 arranged for Saudi to transport freight, with the proviso that Saudi charge competitive rates. Forwarding and Saudi discussed the terms of their arrangement, and on September 23, 1983 Forwarding sent Saudi a letter confirming some of those terms. That letter included the following paragraph:

> We have experienced some delays in payment from our customer due to administrative problems in the Kingdom of Saudi Arabia. We would ask you to kindly extend our credit to forty five (45) days to accomodate (sic) such delays.

In the ordinary course of business, Barsac would have Forwarding arrange for Saudi to ship freight from the United States to Saudi Arabia for use in the Project. After Saudi had shipped the cargo, Saudi would provide Forwarding the air waybills for this freight, and Forwarding

would bill Barsac for the freight charges reflected in those bills. Barsac in turn would demand payment from Gulf, who then would submit the bills to Bechtel for approval. Upon Bechtel's approval, MODA would pay Gulf, who then would pay Forwarding through Barsac, Gulf's agent.

The IATA Agreement and the parties' understanding required Forwarding to pay Saudi the freight charges as soon as Saudi had submitted the air waybills and requested payment, even if Forwarding had collected nothing from Barsac. On a regular basis, Forwarding submitted Cargo Agent Sales Reports to Saudi. On at least one occasion, February 17, 1984, Forwarding sent Saudi a check for $489,941.82 along with its Cargo Agent Sales Report.

On June 7, 1984, Saudi sent Forwarding a letter requesting payment for freight charges totaling $1,064,737.00. This figure included a charge for alleged tariff corrections and, according to Saudi, reflected a deduction for Forwarding's 5 percent commission. In a letter dated June 13, 1984, Forwarding responded that it owed Saudi only $937,701.01, challenging the tariff corrections Saudi requested. Saudi replied on June 27, 1984 with an explanation of its charges and a modified request for payment of $1,064,660.68. In response, Forwarding sent Saudi a letter on July 2, 1984 setting forth the special rates Saudi had agreed to originally and reiterating its refusal to pay Saudi the tariff corrections charge.

On July 25, 1984, Forwarding sent Barsac a letter requesting payment for outstanding freight charges totaling $961,650.59. In that letter, Forwarding said:

As far as the correction notices are concerned, we have protested to Saudi Arabian Airlines that the corrections are invalid. We feel that our position on this is quite strong but obviously we cannot guarantee success.

We hope that this mammoth exercise will finally enable a payment to be made in order that we can meet our obligations with Saudia.

Saudi subsequently discovered additional air waybills bringing the amount Forwarding owed it, net of Forwarding's commissions, to $1,147,753.35. On August 12, 1985, Saudi submitted to Forwarding a final invoice in this amount. Forwarding denies ever receiving this invoice.

At Bechtel's instigation, Arthur Anderson & Co., a large international accounting firm, audited Forwarding's accounts relating to the dispute.

When Saudi's New York office failed to collect its money from Forwarding, the airline referred the dispute to its head office in Jeddah, Saudi Arabia. On April 30, 1985, Saudi wrote the Saudi Arabian Minister of Finance and National Economy (the "Minister of Finance") requesting that the Minister of Finance direct MODA to withhold all payments to Forwarding. The Minister of Finance was overseeing payments to the parties involved in the Project.

In January 1986, Bechtel, pursuant to a performance bond it had posted in connection with the Project, paid Saudi $1,117,742.50 for the freight charges Saudi had been demanding from Forwarding. Because Saudi had requested payment net of Forwarding's 5 percent commissions, this figure represents 95 percent of the total freight charges.

When it received this money, Saudi wrote the Minister of Finance acknowledging that it had been paid the money Forwarding owed it and asking the Minister of Finance to lift the retention of Forwarding's funds. Bechtel sent a copy of this letter to Seatrain, who forwarded a copy to Barsac. Barsac in turn sent Forwarding a copy.

Saudi never paid Forwarding its commissions for the freight charges Bechtel paid Saudi. Nor did Forwarding obtain those commissions from MODA.

On March 19, 1985, Forwarding borrowed $75,000 from The Shipping Group Ltd. ("Shipping"), secured by a security agreement granting Shipping rights in, among other things, Forwarding's accounts receivable. Shipping subsequently assigned this loan and the security agreement to International.

*Standard for Summary Judgment*

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See id.* at 247–48, 106 S.Ct. at 2509–10; *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*Standard for a Motion to Dismiss*

■ A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). In considering a 12(b)(6) motion to dismiss, a court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Law-*

*yers' Assoc.,* 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969).

*Forwarding's Claim for Commissions*

■ Although Bechtel paid Saudi the freight charges it otherwise would have channeled through Forwarding, Saudi never paid Forwarding its 5 percent commissions. Nor did Forwarding collect those commissions directly from MODA. International—Forwarding's assignee—has sued Saudi to collect the unpaid commissions. For the reasons set forth below, Saudi is granted summary judgment on International's claim.

The IATA Agreement governs Forwarding's right to commissions. Its relevant sections provide:

Remuneration

(4)(a) Payment of Remuneration

subject to the terms and provisions of this Agreement, the Carrier shall pay remuneration for the sale of air cargo transportation and the handling of consignments therein....

(b) Duties of Agent

remuneration shall be payable only to a registered IATA Cargo Agent appointed by the paying Carrier, in accordance with Section B of the Cargo Agency Administration Rules, which has performed at least the following duties in respect of the consignment:

(i) accepted the goods from the shipper (or arranged for such acceptance);

(ii) [arranged for delivery of the goods to the Carrier];

(iii) collected and accepted payment of prepaid transportation and other charges; but this shall not prevent payment of remuneration on transportation charges which are not prepaid, so long as all other requirements of this Paragraph are complied with;

In addition, paragraph (5)(b) of the section entitled "Remittances and Responsibility for Payment" states: "Unless otherwise instructed by the Carrier, the Agent shall

be entitled to deduct from such remittance the applicable remuneration."

The IATA Agreement provides that the carrier—here Saudi—bears the responsibility for paying the agent's commissions. In his Answering Declaration, William J. Spanton, Forwarding's president, describes Forwarding's usual methods of collecting commissions from Saudi as follows:

8. ... Sometimes, in making payment, Forwarding would deduct its compensation from the freight charges before turning them over to Saudia. At other times Forwarding was paid its commission by a remittance from Saudia, and Forwarding, in turn, remitted the freight charges in full.

Here, neither of these options was available. Because Saudi circumvented the normal channels by going directly to Bechtel, Forwarding had no opportunity to deduct its commissions before turning the freight charges over to Saudi. Saudi has refused to pay Forwarding its commissions as a direct remittance.

Although the IATA Agreement makes Saudi responsible for paying Forwarding's commissions, Saudi would be relieved of this obligation if Forwarding breached the parties' agreement by failing to pay promptly Saudi's freight charges. *See Melodies Inc. v. Mirabile,* 7 A.D.2d 783, 784, 179 N.Y.S.2d 991, 993 (3d Dep't 1958) ("breach of contract not only renders breacher liable in damages but also excuses obligee from duty of further performance"); *Matter of Int'l Ribbon Mills, Ltd.,* 36 N.Y.2d 121, 126, 325 N.E.2d 137, 139, 365 N.Y.S.2d 808, 811 (1975) ("It is elementary ancient law that an assignee ... is subject to all the equities and burdens which attach to the property assigned.").

Saudi claims that the IATA Agreement required Forwarding to pay Saudi the freight charges as soon as Saudi demanded payment, even if Forwarding had yet to collect the funds from the shipper. The relevant sections provide:

[ (5) Remittances and Responsibility for Payment]

(a) all monies collected by the Agent for transportation sold hereunder, are the property of the Carrier;

(b) the Agent shall remit to the Carrier such monies at such times, under such conditions and in such currencies as the Carrier may designate from time to time, in writing, in accordance with the provisions of the Cargo Agency Administration Rules. Unless otherwise instructed by the Carrier, the Agent shall be entitled to deduct from such remittance the applicable remuneration. If no monies are due, the Agent, if required to submit sales reports, shall submit a "No Sales" report with the same frequency as the sales report;

(c) subject to Government regulation and unless the Carrier otherwise designates, the Agent shall pay in the actual currency received all monies due to the Carrier;

(d) notwithstanding the foregoing, *the Agent shall be responsible for the payment of any monies due to the Carrier* under this Agreement resulting from the issuance of any transportation documents in the name of the Carrier, *whether or not such monies have been collected by the Agent,* whether or not such monies, if collected, are still in the possession of the Agent, and whether or not such monies, if collected and deposited with a bank or any other third person, are recoverable....

(Emphasis added). In *In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293 (2d Cir.1984), the Court of Appeals recognized that these IATA Agreement provisions require an agency "to transmit its sales proceeds at regular intervals, rather than upon receipt or demand...." *Id.* at 296. Moreover, the fact that Forwarding submitted a payment for freight charges along with its Cargo Agent Sales Report in early 1984 indicates that the parties' practice was in accordance with the IATA Agreement.

Forwarding disputes Saudi's version of the remittance arrangement, arguing that the parties had modified the IATA Agree-

ment to permit Forwarding to pay Saudi its freight charges after collecting payment for those charges from Barsac. In his Answering Declaration, William J. Spanton, Forwarding's president, says:

> 9. It was understood between the parties that Forwarding could not pay until it had been paid by the Saudi Arabian Government.... In the normal course of business in the early part of 1984, Forwarding would not have remitted the payments at issue to Saudia's New York office. According to the understanding between the parties, Forwarding was not required to pay until it collected the freight charges directly or indirectly from the shipper.

The parties' understanding regarding Forwarding's duty to pay Saudi's freight charges is the central fact underlying Forwarding's alleged breach of contract. If Saudi's version is correct, then Forwarding breached its contract by failing to pay Saudi promptly in response to the airline's June 9, 1984 payment request and Saudi has no obligation to pay Forwarding's commissions. If Forwarding's version prevails, however, then Forwarding bears no responsibility for the delayed payment.

Because no reasonable jury could find that the parties had modified the IATA Agreement, summary judgment for Saudi is appropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The only evidence Forwarding offers to support its argument is Spanton's affidavit, which contains a conclusory statement that the parties had agreed to depart from the IATA Agreement. Despite the IATA Agreement's unequivocal requirements, however, Forwarding can point to no written instrument altering the Agreement's

application to Forwarding's and Saudi's relationship.

Saudi, on the contrary, refutes Spanton's statement with the affidavit of Ruben Alonso, Saudi's District Finance Supervisor in New York. Moreover, Saudi offers in support of its contention the IATA Agreement, which Forwarding signed, and a check from Forwarding, indicating Forwarding's compliance with the IATA Agreement. On the available evidence, Saudi's version clearly prevails, and no reasonable jury could find otherwise.

*Saudi's Counterclaim for Interest*

▇ Saudi has counterclaimed, alleging breach of contract. It attempts to hold International responsible for the interest Forwarding purportedly owes Saudi on freight charges outstanding from June 1983, when Saudi first demanded payment, until January 1986, when Bechtel paid Saudi for these charges. International has moved to dismiss this counterclaim for failure to state a claim upon which relief can be granted. For the reasons set forth below, International's motion to dismiss is granted.

▇ International has brought this suit as the assignee of Forwarding's accounts receivable, alleging that one of those accounts receivable entitles it to collect unpaid commissions Saudi owes Forwarding. Saudi can defend against this claim by establishing that Forwarding's breach of contract destroyed Forwarding's right to the commissions, but it cannot hold International liable for Forwarding's breach of contract. International was not a party to that contract and played no role in the alleged breach. International acquired Forwarding's right to payment, not its obligation to perform. It therefore cannot be held liable for Forwarding's alleged failure to perform.[1]

---

1. International's contention that Saudi released Forwarding from liability when it sent the Minister of Finance a letter stating "we have received the amount due" on the outstanding freight charges is without merit. Under New York law, a release must include an "explicit, unequivocal statement of a present promise to release" the obligor. *Carpenter v. Machold,* 86 A.D.2d 727, 447 N.Y.S.2d 46, 47 (3d Dep't 1982); *New Again Constr. Co. v. City of New York,* 76

Misc.2d 943, 945, 946, 351 N.Y.S.2d 895, 899, 900 (N.Y.Sup.Ct.1974). The letter International attempts to characterize as a release was addressed to the Minister of Finance, not Forwarding, Barsac, or Seatrain. Nor did it state an intention to release Forwarding from any interest the company may have owed Saudi for the delayed freight payments. The letter merely was an acknowledgment to the Minister of Fi-

**392**

*Conclusion*

For the reasons set forth above, Saudi is granted summary judgment on International's claim for unpaid commissions, and Saudi's counterclaim for interest is dismissed.

It is so ordered.

nance that Saudi had received payment from Bechtel.