724 F.Supp. 1096 (1989)
George EMANUEL, Elaine Emanuel and Julie Emanuel, a Minor, by her parents, George Emanuel and Elaine Emanuel, Plaintiffs,
v.
Brad BARRY and Robert Lesser, Defendants.
No. CV 83-810.
United States District Court, E.D. New York.
November 14, 1989.
*1097 James P. Kreindler, Kreindler & Kreindler, New York City, for plaintiffs.
Brad Barry, Stormville, N.Y., pro se.
Stephen M. McCabe, McCabe & Cozzens, Mineola, N.Y., for defendant Robert Lesser.

MEMORANDUM AND ORDER
DEARIE, District Judge.
Plaintiffs, a family of three, allege under 42 U.S.C. § 1985(3) that defendants conspired to and did deny them equal protection of the laws and equal privileges and immunities in that, motivated by anti-Semitic animus, defendants set fire to plaintiffs' barn, located a few feet from plaintiffs' house in Kings Point, New York. Plaintiffs allege specifically that these actions deprived them of their right to be secure in their persons, interfered with their right to religious freedom, and deprived them of their property without due process of law. The complaint also contains pendent state law claims alleging assault, intentional infliction of emotional distress and property damage.
The fire was set at approximately 2:00 A.M., while plaintiff George Emanuel, his wife Elaine, and their daughter Julie, were asleep inside the home. The barn, its contents and surrounding property, including plaintiffs' automobile, were destroyed. Fortunately, all three plaintiffs escaped, *1098 but not without injury. Plaintiffs now seek recovery for their personal injuries and property loss, as well as punitive damages.
Both defendants were charged with third degree arson, criminal mischief and other crimes. Following a jury trial, defendant Barry was convicted of all charges; defendant Lesser pled guilty to the lesser offense of attempted fourth degree arson. Defendant Barry is presently serving a prison term of five to fifteen years and is acting pro se; defendant Lesser is on probation and is represented by counsel in this action.
Defendants move to dismiss the 1985(3) claim on the ground that state action is required in order for plaintiffs to make out their 1985(3) claim. Plaintiffs concede the absence of state action, but insist that because defendants acted with class-based animus, namely, anti-Semitism, no state action is required.
Plaintiffs also move for partial summary judgment on their state law claims on the ground that the essential elements of those claims were conclusively established by defendants' criminal convictions.

DISCUSSION

I. Defendants' Motion to Dismiss

A. Standard for Motion to Dismiss

A complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). See also Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); Branko International, Inc. v. Saudi Arabian Airlines, 704 F.Supp. 386 (S.D.N.Y.1989). For the purposes of the 12(b)(6) motion, the allegations must be construed in the light most favorable to plaintiffs and accepted as true. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Branko International, Inc., 704 F.Supp. at 389. Finally, on a motion to dismiss, a court should "examine the complaint to determine if the allegations provide for relief on any possible theory." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 602 (Supp.1988). Indeed, "the fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory." Doss v. So. Central Bell Telephone Co., 834 F.2d 421, 424 (5th Cir.1987). Particularly where a party sues under the wrong section of the federal civil rights statutes, a court may uphold the complaint if the allegations satisfy another section. See Robertson v. Johnston, 376 F.2d 43 (5th Cir.1967).

B. Section 1985(3)  General Principles

This case raises two difficult questions concerning the applicability of section 1985(3) which require a rather detailed review of applicable precedent. Indeed, the questions themselves can only be meaningfully described after a survey of the cases interpreting the statute.
Section 1985(3) provides:
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3).
In Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court upheld a claim under 1985(3) against private actors who, it was alleged, attacked three men walking along a highway solely because the men were black. The Court unequivocally held that *1099 section 1985(3) itself has no state action requirement and thus reaches private conspiracies, despite language in the statute that appears to suggest otherwise. As the Court explained, a conspiracy is actionable under section 1985(3) when it is "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The Court acknowledged that this language is strikingly similar to the Fourteenth Amendment,
which in terms speaks only to the States, and judicial thinking about what can constitute an equal protection deprivation has, because of the Amendment's wording, focused almost entirely upon identifying the requisite "state action" and defining the offending forms of state law and official conduct. A century of Fourteenth Amendment adjudication has, in other words, made it understandably difficult to conceive of what might constitute a deprivation of the equal protection of the laws by private persons.
Griffin, 403 U.S. at 97, 91 S.Ct. at 1796.
Nonetheless, the Court concluded, "there is nothing inherent in the phrase that requires the action working the deprivation to come from the State." Id.
Having established that "text, companion provisions and legislative history ... point unwaveringly to § 1985(3)'s coverage of private conspiracies," id. at 101, 91 S.Ct. at 1798, the Court also recognized that the statute was not intended to apply to "all tortious, conspiratorial interferences with the rights of others." Id. The limiting element was the requirement of "invidiously discriminatory motivation." Id.
Additionally, the Court gave some indication of what it earlier in the opinion admitted was a difficult thing to conceive: behavior which "might constitute a deprivation of the equal protection of the laws by private persons." Id. at 101, 91 S.Ct. at 1798. The Court stated:
The language [of section 1985(3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.
Id. at 102, 91 S.Ct. at 1798 (emphasis in original) (footnote omitted).
Griffin thus established that pleading a conspiracy to deny the equal protection of the laws or equal privileges and immunities does not necessarily amount to an invocation of the Fourteenth Amendment, and thus does not require that state actors be involved in the deprivation.
Importantly, the Griffin Court expressly left open questions concerning the scope of the statute's application. First, in deciding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus," id. at 102, 91 S.Ct. at 1798, the Court also stated:
We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us.
Id. 91 S.Ct. at 1798, n. 9. Additionally, the Court noted that "since the allegations of the complaint bring this cause of action so close to the constitutionally authorized core of the statute, there has been no occasion here to trace out its constitutionally permissible periphery." Such remarks clearly indicate that section 1985(3) has broader application than conspiracies to assault blacks on the highways; the question, however, is where to draw the line.[1]
*1100 Eight years later the Supreme Court again discussed the scope of section 1985(3) in Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). There, the Supreme Court explained that "section 1985(3) provides no substantive rights itself: it merely provides a remedy for violation of the rights it designates," 442 U.S. at 372, 99 S.Ct. at 2349, those rights being "the equal protection of the laws, or the equal privileges and immunities under the laws," which Griffin teaches are not to be confused with the "equal protection" rights of the Fourteenth Amendment protected against encroachment by only state actors. In short, Novotny is a bold reminder that
[s]ection 1985(3) ... creates no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right  to equal protection of the laws or equal privileges and immunities under the laws  is breached by a conspiracy in the manner defined in the section.
442 U.S. at 376, 99 S.Ct. at 2351 (emphasis in original). In other words, there must be some sort of predicate constitutional right which the alleged conspirators conspired to violate.
The Supreme Court again addressed the question of the scope of section 1985(3) in United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In Scott a construction company and two employees brought suit under section 1985(3) against a trades council, union members and other private individuals alleging assault of the workers, and destruction of property. The Court held that state action was required, explaining the relationship of state action to section 1985(3):

Griffin did not hold that even when the alleged conspiracy is aimed at a right that is by definition a right only against state interference that the plaintiff in a § 1985(3) suit nevertheless need not prove that the conspiracy contemplated state involvement of some sort. [Griffin upheld] the application of § 1985(3) to private conspiracies aimed at interfering with rights constitutionally protected against private as well as official encroachment.
463 U.S. at 833, 103 S.Ct. at 3358. Thus, because the rights claimed to have been infringed in Scott had their source in the First Amendment, which restrains only state, not private, conduct, state action was necessary for a claim under 1985(3).
As aptly summarized by the Court of Appeals for the District of Columbia Circuit,
the Court [in Scott] reaffirmed that the interpretation of [section 1985(3)] is not generally (emphasis in original) limited by the state action constraints of the Fourteenth Amendment; section 1985(3) in fact applies to wholly private conspiracies as long as they are aimed at interfering with rights constitutionally protected against private as well as official encroachmentsuch as the Thirteenth Amendment and the right to travel.... Thus, when state action is involved, the whole spectrum of rights against state encroachment that the Constitution sets forth come into play. When no state action is involved, only those constitutional rights that exist against private actors may be challenged under the section.

Hobson v. Wilson, 737 F.2d 1, 15 (D.C.Cir. 1984) (emphasis added).
Scott, like Griffin, expressly left open the question whether section 1985(3) was intended to reach any class-based animus other than animus against blacks. Noting that "it is a close question," the Scott court reviewed legislative history tending "to support the view that § 1985(3) has a broader reach," 463 U.S. at 836-37, 103 S.Ct. at 3360,[2] but nonetheless decided to

*1101 withh[o]ld judgment on the question whether § 1985(3), as enacted, went any farther than its central concern  combating the violent and other efforts of the Klan to frustrate the intended effects of the Thirteenth, Fourteenth and Fifteenth Amendments.
463 U.S. at 837, 103 S.Ct. at 3360.

C. Application to the Instant Action

As stated earlier, this case raises two questions concerning the application of section 1985(3): first, whether anti-Semitism constitutes the "racial, perhaps otherwise class-based, invidiously discriminatory animus" required by Griffin for a section 1985(3) claim, and second, whether (because the absence of state action is conceded) plaintiffs have alleged deprivation of a constitutional right assertable against private actors.

1. Jews as a class under section 1985(3).

Although the Supreme Court has consistently withheld judgment on the question of whether section 1985(3) reaches bias against races, other blacks, or discriminatory intent other than racial bias, appellate courts have consistently held that racial groups other than blacks, as well as groups other than races  when they are the object of discriminatory animus because of their membership in such groups  are a "class" within the ambit of section 1985(3). See, e.g., New York State National Organization for Women, et al. v. Operation Rescue, et al., 886 F.2d 1339 (2d Cir.1989) (women are a class under section 1985(3)); Keating v. Carey, 706 F.2d 377, 386-88 (2d Cir.1983) (political affiliation); Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir.1988) (private discrimination based on, inter alia, religion and "ethnicity" is actionable).
Additionally, although no Court has addressed the question whether Jews are a class for 1985(3) purposes, the Supreme Court has held that Jews may sue for racial discrimination under a comparable provision of the Civil Rights Act, 42 U.S.C. § 1982. Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). That section guarantees to "[a]ll citizens of the United States ... the same right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold and convey real and personal property." Like section 1985(3), it applies to private actors, and was "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Saint Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022, 2029, 95 L.Ed.2d 582 (1987) (companion case to Shaare Tefila, holding that Arabs may sue under section 1982).
Confronted with the question of Jews' status, the Supreme Court in Shaare Tefila determined that
at the time § 1982 was adopted, Jews constituted a group of people Congress intended to protect [because they] ... were among the peoples then considered to be distinct races and hence within the protection of the statute.
107 S.Ct. at 2022. Thus, the Court held, "Jews are not foreclosed from stating a cause of action [for racial discrimination under section 1982] against other members of what today is considered to be part of the Caucasian race." Id. Finding no ascertainable reason to treat Jews differently for the purposes of section 1985(3), this Court concludes that anti-Semitic animus is actionable under section 1985(3).[3]

*1102 2. An appropriate predicate Constitutional right.

As stated earlier, the second question to be decided is whether defendants conspired to deprive plaintiffs of one of those rights constitutionally protected against private encroachment. In light of the three Supreme Court, and numerous appellate court, decisions discussed earlier, there can be no doubt about the relation of state action to section 1985(3): the statute itself imposes no additional state requirement but merely provides a remedy for the violation of constitutional rights. The question of whether state action is required is answered by examining the constitutional rights allegedly infringed by the defendants. If the underlying constitutional right in a 1985(3) suit is one the Constitution guarantees against only state encroachment, then state action is required.
Plaintiffs' complaint alleges three specific rights, two of which unquestionably are protected only against state action: the right not to be deprived of property without due process of law, and the right to religious freedom. Thus, absent state action, these two allegations are insufficient, as a matter of law, to support a claim under section 1985(3).
More difficult to assess is plaintiffs' claim that they were denied their right to be secure in their persons. Despite the allusion to Jefferson's Declaration of Independence, and the layman's sense that the right is one of the basic rights that the law secures to all free men, the Constitution is not coextensive with natural law. Plaintiffs are correct that "the law" does guarantee them the right to be secure in their persons, but the law which does so is the criminal and tort law of their state, not the federal constitution.
Most difficult to assess is plaintiffs' blanket allegation, tracking the statutory language, that they were denied their right to equal protection of the laws and equal privileges and immunities. Griffin instructs that such language is not necessarily an invocation of the Fourteenth Amendment but, beyond that, fails to explain in a meaningful way how a deprivation of equal protection of the laws occurs by private action. As indicated earlier, in order to read a state action requirement out of the statute, the Court held that the "equal protection" and "privileges and immunities" clauses of the statute do not mirror the similarly worded clauses in the Fourteenth Amendment. Thus, although the Court left no doubt concerning state action, it left unanswered questions concerning the scope of these terms (equal protection and privileges and immunities) for section 1985(3) purposes.
As indicated earlier, in one passage the Court offers some insight, identifying as an essential element of a deprivation of equal protection of the laws by private persons the presence of "racial, or ... otherwise class-based, invidiously discriminatory animus." This passage at first blush might appear to have created a substantive 1985(3) right: the right not to have others act in a racially discriminatory fashion towards you. In other words, it invites the inference that to act with class-based discriminatory intent is itself unconstitutional private action. Nonetheless, the Court has consistently emphasized that the statute does not create substantive rights, thus precluding, as a matter of law, such a broad interpretation of "equal protection."
This Court notes the remarkable similarity between the facts of Griffin  three black men, walking along a roadway, ambushed because they were black  and those alleged in this case  a Jewish family of three, asleep in their beds, ambushed because they are Jewish. Both are episodes of condemnable, invidiously discriminatory racial violence. It is thus difficult to reconcile the opposite results, for 1985(3) purposes, required by Griffin: the former is at the constitutional core of the statute, yet the latter is not cognizable. The explanation, however, is that under Griffin and its progeny, in the absence of state action, section 1985(3) plaintiffs must allege a conspirational deprivation of a particular right constitutionally protected against private encroachment. Conveniently, the Griffin Court could ground the claims of those blacks in the right to travel and the Thirteenth *1103 Amendment. The Emanuels can allege at best only their rights to be free from racial violence, not to be terrorized, and to be secure in their personal effects and property. Although clearly among the "basic rights that the law secures to all free men," Griffin, 403 U.S. at 105, 91 S.Ct. at 1800, they are not among the rights the Constitution guarantees against private deprivation.
Thus, because of their failure to allege deprivation of a constitutional right assertable against private actors, dismissal of plaintiffs' 1985(3) claim cannot be avoided. Nonetheless, plaintiffs are not without a remedy under the civil rights laws. In this Court's view, plaintiffs' complaint easily states a cause of action under 42 U.S.C. § 1982 for interference with their right to hold property. Indeed, plaintiffs' allegations are strikingly similar to those held sufficient in Shaare Tefila, where it was alleged that desecration of a synagogue with anti-Semitic slogans, phrases and symbols violated section 1982. Thus, although the section 1985(3) claim must be dismissed, plaintiffs are granted leave to replead, within thirty days of the entry of this order, under section 1982.

II. Plaintiffs' Motion for Partial Summary Judgment on the State Law Claims

Plaintiffs' motion for partial summary judgment on their state law claims shall be held in abeyance pending action (if any) by plaintiffs with respect to their civil rights claim in light of today's decision. In the event plaintiffs elect not to file an amended complaint containing a section 1982 claim, they are directed to inform the Court, in writing, of that decision within the thirty day period following entry of this order, and this Court shall determine what actions are appropriate at that time.

CONCLUSION
Defendant's motion to dismiss plaintiffs' claim under 42 U.S.C. § 1985(3) is granted, but plaintiffs are granted leave to file an amended complaint alleging a violation of 42 U.S.C. § 1982 within thirty days of the entry of this order. Plaintiffs' motion for partial summary judgment on their state law claims is deferred pending plaintiffs' decision whether to replead. If they elect not to replead, plaintiffs are to so inform the Court and include a statement of their intentions with respect to this lawsuit.
SO ORDERED.
NOTES
[1] The Court located the source of Congressional power to reach private conspiracies in the Thirteenth Amendment, pursuant to which "Congress has the power ... rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation", id. 91 S.Ct. at 1800 (citation omitted), and the right of interstate travel, which is also assertable against private interference. Id. The Court did not foreclose, however, the possibility of Fourteenth Amendment authority for the statute: because the case involved discriminatory action against blacks, the Court found the statute as applied to those facts to be "wholly within" Congress' powers under § 2 of the Thirteenth Amendment, id. at 1800, and therefore acknowledged that "the allegations ... in this case have not required consideration of the scope of the power of Congress under § 5 of the Fourteenth Amendment." Id. at 1801.
[2] For example, Senator Edmunds stated on the floor of the Senate that if there existed a conspiracy against a person "because he was a Democrat, if you please, or because he was a Catholic or because he was a Methodist, or because he was a Vermonter, ... then this section could reach it." Cong.Globe, 42d Cong., 1st Sess. 567 (1871), quoted in Scott, 463 U.S. at 837, 103 S.Ct. at 3360. Although the Court acknowledged that Senator Edmunds' views "are not without weight," the Court also pointed out that the provision that is today's 1985(3) originated in the House, and the Senate only made technical changes.
[3] The Court need not decide whether the anti-Jewish animus in this case was "racial" per se or "religious," because even religious groups which are the object of discriminatory animus have been deemed to fall within the ambit of section 1985(3). See Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir.1985) (allegations of abduction and deprogramming based on anti-religious animus directed at the Unification Church actionable under § 1985(3)); Ward v. Connor, 657 F.2d 45 (4th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982) (same).