**Tina JOHNSON, Steve Johnson, Tracy Johnson, Rose Johnson and Jilda Johnson Lewis, Plaintiffs,**

**v.**

**William SMITH, Kevin O'Brien, Brian Emberton, William Glowacki, David Emberton, Julia Emberton, Donald Stephens, Catherine Stephens, Lance Glowacki, and Cathy Palamar, Defendants.**

**No. 92 C 5495.**

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1992.

Elizabeth Shuman–Moore, Chicago Lawyers' Committee for Civil Rights, James R. Ferguson, Richard Michael Hoffman, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiffs.

Marshall Kaplan, Chicago, IL, for William Smith.

M.C. Davis, Chicago, IL, for Christopher Stephens and Catherine Stephens.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Tina Johnson and members of her family (collectively "Johnsons") have sued a number of defendants whom they charge with responsibility for a cross-burning in the yard outside of Johnsons' residence and for the related breaking of one of the windows in their home. Although several state law claims are included in Johnsons' First Amended Complaint (the "Complaint") under the principles of supplemental jurisdiction embodied in 28 U.S.C. § 1367, federal jurisdiction is invoked under two of the post-Civil–War Civil Rights Acts (42 U.S.C. §§ 1982 and 1985(3)), as well as the century-later Fair Housing Act (42 U.S.C. § 3617).[1] While Tina Johnson is a Caucasian of Italian descent, her three children by a former husband and her daughter-in-law (all of whom live in the residence targeted by the ugly incidents and all of whom are co-plaintiffs) are of African–American descent.

Two of the defendants, Christopher and Catherine Stephens (collectively "Stephenses"), initially filed an Amended Answer and Affirmative Defense to the Complaint. This Court then issued a brief December 2, 1992 memorandum opinion and order, which in part directed Stephenses to address their legal defenses via a motion and supporting memorandum to enable those issues to be confronted at the outset. In response Stephenses have filed a Motion To Dismiss attacking each of the Complaint's counts that are grounded in the three Title 42 provisions. Because their motion is legally unsound, it is denied in its entirety.

■ Both sides should be reminded at the outset that the viability of a complaint is not dependent on the tyranny of labels—instead the test remains the simple one most recently repeated by the Supreme Court in *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984):

---

1. All further references to Title 42 provisions will simply take the form "Section—."

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Our Court of Appeals has recently reconfirmed (through two different panels, coincidentally speaking on the same day!) that for that purpose it does not matter whether a pleader places any label—or even the wrong label—on the claim or claims (*Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir.1992) and *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 291–93 (7th Cir.1992); accord, this month's opinion in *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir.1992), quoting *Hishon* and emphasizing the word "consistent"). But because Johnsons' counsel has indeed set out and labeled separate counts and because there might perhaps be some differences in treatment under the different federal statutes that Johnsons have invoked (see *NAACP*, 978 F.2d at 293), this opinion will address each of the claims in the sequence that they have been advanced.

■ As for the Count I claim based on Section 1982, this Court is constrained to observe that the responsive presentation by Stephenses' counsel is somewhat disingenuous. Counsel says (Mem. 2) that "case law, as decided by this Court, has held that the Plaintiffs have no cause of action under Sec. 1982 given the facts as pled," pointing to the opinions by this Court's colleague Honorable Marvin Aspen in *Stackhouse v. DeSitter*, 566 F.Supp. 856 (N.D.Ill.1983) ("*Stackhouse I*") and 620 F.Supp. 208 (N.D.Ill.1985) ("*Stackhouse II*"). No matter how high a regard this Court has for its colleagues, our Court of Appeals periodically reminds us that we district judges ·do *not* make precedent. Another decision by

another district judge is not one "decided by this Court," either literally or in legal effect.

In any case, it is really irrelevant whether this Court would agree with the analysis in *Stackhouse I*, which held that a number of race-discriminatory acts (including the firebombing of the parked car of the African–American plaintiff in that case) did not deprive that plaintiff of the real-property-related rights protected by Section 1982.[2] What *is* relevant is that this Court does concur entirely in the conclusion later reached by its then colleague Honorable Nicholas Bua in *Stirgus v. Benoit*, 720 F.Supp. 119, 121–22 (N.D.Ill.1989), which upheld a Section 1982 claim based on the firebombing of the home of an African–American who had moved into a predominantly white neighborhood in Chicago (accord, *Emanuel v. Barry*, 724 F.Supp. 1096, 1103 (E.D.N.Y.1989)). Because the acts that are ascribed to Stephenses and their co-defendants share the same goal of terrorizing and intimidating Johnsons in the occupancy of their home as the firebombing in *Stirgus*,[3] what was said in that case could well have been written for this one, with much of the *Stirgus* discussion quoted at length. Instead this Court will simply cite *Stirgus* and follow its holding to arrive at the same destination.

■ Nor is it necessary to rely on non-precedential opinions by district courts to reach that conclusion. To turn to courts that *do* make precedent, no less than the ultimate authority—the United States Supreme Court—has confirmed that the desecration of a building motivated by racial animus violates Section 1982 (*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 107 S.Ct. 2019, ·95 L.Ed.2d 594 (1987)). And it is more than worth noting that *United*

---

**2.** If it were necessary to do so, an effort might be made to distinguish *Stackhouse I* from this case. But no such effort is required, for if the cases were to prove indistinguishable this Court would simply disagree respectfully but firmly with *Stackhouse I*. It might be observed that *Stackhouse I*, 566 F.Supp. at 859 emphasized that plaintiff's counsel there had cited no authority in support of his Section 1982 claims, nor had the court found any. Whatever the situation may have been in 1983, no such dearth

of authority exists today, as the ensuing text demonstrates.

**3.** Even though Justice is regularly portrayed as blindfolded, Stephenses' counsel ascribe to the judiciary a special degree of blindness in expecting that the symbolic significance of a cross-burning, given the part that such acts played in our country's history of oppression of African–Americans, would go unnoticed by this Court.

*States v. Greer,* 939 F.2d 1076, 1082–83, 1091 (5th Cir.1991) has upheld a *criminal* conviction of a conspiracy to violate Section 1982 based on entirely comparable conduct.

That then clearly requires rejection of Stephenses' attack on Count I's Section 1982 claim. And given the nature of the conduct that underpins both Count I and the conspiracy alleged in Count II, it would seem to follow as a matter of course that the conspiracy, plainly motivated by racial animus, also sustains the related claim under Section 1985(3) (see the discussion in *Stirgus,* 720 F.Supp. at 122–23).

■ This Court is of course well aware of the thoughtful discussion in *Emanuel,* 724 F.Supp. at 1098–1101, 1002–03, which gives Section 1985(3) a narrower breadth than Section 1982. No view need be expressed here as to the general soundness of that analysis as an abstract matter. But in this case we are dealing with terrorization of the very racial group that Section 1985(3) (to say nothing of the Thirteenth through Fifteenth Amendments) was enacted to protect, and terrorization through precisely the type of conduct that led to the statute's enactment in the first place—it will be remembered that the Supreme Court described the "central concern" of Section 1985(3) in these terms in *United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983):

> combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth and Fifteenth Amendments.

Where the oppressive and outrageous conduct that triggered this lawsuit was the paradigmatic act that exemplifies the Ku Klux Klan in real life (and understandably in motion pictures and cartoons as well), it would be a solecism to deny Section 1985(3) coverage to its victims.

■ Count III's invocation of Section 3617 requires a bit more discussion. First

of all, as a purely technical matter neither side seems to have noticed that the statute has been changed from the version that was in force at the time of both *Stackhouse II* and *Stirgus*[4]—a change that involved the elimination of its final sentence, which had provided that "[t]his section may be enforced by appropriate civil action." Since the March 1989 effective date of the Fair Housing Amendments Act of 1988, Pub.L. 100–430, Section 3617 says only this:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Instead of the former inclusion of a private-right-of-action provision in Section 3617, a new Section 3613 was put in place by the same amendatory statute to deal with enforcement by private persons, reading in relevant part (Section 3613(a)(1)(A)):

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

And to complete the roadmap for the required analysis, Section 3602(f) now provides:

> "Discriminatory housing practice" means an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title.

So it turns out that the several structural changes bring the inquiry to the same point of beginning: Does the alleged conduct of Stephenses and their co-defendants violate

---

**4.** In *Stackhouse II,* 620 F.Supp. at 210–11 Judge Aspen reconsidered and reversed his earlier determination in *Stackhouse I,* 566 F.Supp. at 859, by ultimately holding that the plaintiff in that

case *did* state a claim under Section 3617. Judge Bua reached the identical conclusion in *Stirgus,* 720 F.Supp. at 123.

the already-quoted language of the present version of Section 3617? Both *Stackhouse II* and *Stirgus,* and the cases cited in each of those decisions, effectively hold that even though a defendant has not interfered with a plaintiff's *initial* exercise of his or her right to rent or purchase housing free of racial discrimination, the defendant's later effort to drive the plaintiff out of such housing will nonetheless run afoul of the statute (which specifically protects both the *exercise* and the *enjoyment* of rights granted or protected by the substantive provisions).

It is at least a fair inference from Johnsons having moved into the residence where they have been the target of the outrage alleged in their Complaint that in doing so they did indeed exercise the right to obtain housing free of discrimination based on their race.[5] And although Section 3617 could perhaps be read more narrowly than has been done in the cases cited in this opinion, this Court will construe that statute in the same way unless and until persuasive authority that teaches otherwise is adduced by defendants in this action.

### Conclusion

Stephenses' Motion To Dismiss Counts I, II and III is denied in its entirety. This Court relatedly strikes from Stephenses' previously-filed Amended Answer and Affirmative Defense its Paragraph 2, the denial in its Paragraph 17 that Johnsons have a cause of action under the Fair Housing Act and the corresponding Affirmative Defense in its Paragraph 18.

---

**5.** It is a reasonable inference that a cross-burning is more likely the bigots' reaction to an African–American family moving into a formerly all-Caucasian neighborhood; and see *Hrubec,* 981 F.2d at 963–64 for a discussion and demonstration of the generousness with which complaints are to be read.