17-2556
*Okudinani v. Rose*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of July, two thousand nineteen.

PRESENT:

DENNIS JACOBS,
SUSAN L. CARNEY,
JOSEPH F. BIANCO,
            *Circuit Judges.*

———————————————————————————

DENNIS B. OKUDINANI,

            *Plaintiff-Appellant,*

MARK HOGAN, as Guardian and o/b/o
their minor children, J.H. AND I.H.; ELIZABETH M. HOGAN,
as Guardian and o/b/o their minor children, J.H. AND I.H.,

            *Plaintiffs–Counter-Defendants–Appellants,*

            v.                                                      No. 17-2556

FRANK ROSE,

            *Defendant–Counter-Claimant–Appellee,*

COUNTY OF LEWIS, NEW YORK; DAVID VANDEWATER;
RUSSELL FALTER; KATHY WILSON; LEANNE MOSER;

CALEB PETZOLDT; SERGEANT RYAN LEHMAN;
DEPUTY BRETT CRONEISER,

      *Defendants-Appellees.*[*]

---

FOR APPELLANTS:                A.J. BOSMAN, ESQ., Rome, NY.

FOR APPELLEES:                STEPHANIE M. CAMPBELL, Bond, Schoeneck & King, PLLC, Syracuse, NY (*for* Frank Rose).

                                    EDWARD G. MELVIN, II, Barclay Damon, LLP, Syracuse, NY (*for* County of Lewis, Leanne Moser, Caleb Petzoldt, Sergeant Ryan Lehman, and Deputy Brett Croneiser).

                                    MARK D. GORIS, ESQ., Cazenovia, NY (*for* David Vandewater).

                                    MATTHEW J. VANBEVEREN, Gale Gale & Hunt, LLC, Fayetteville, NY (*for* Russell Falter and Kathy Wilson).

Appeal from a judgment of the United States District Court for the Northern District of New York (Rothstein, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 14, 2017, is **AFFIRMED**.

Plaintiffs appeal from a judgment entered following a bench trial on their claims that defendants interfered with their easement and created a private nuisance. This case grows out of a long-standing, convoluted, and contentious property dispute among feuding property owners of subdivided lots within Great Lot 24 (the "Lot") in Greig, New York, a

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

town in Lewis County. Apart from Dennis Okudinani, the parties here are all neighbors who own land within the Lot, a tract that encompasses over 175 acres of land and includes two lakes, Hiawatha Lakes 1 and 2. Defendant David Vandewater has owned a portion of the Lot since 1996. Also within the Lot, Mark and Elizabeth Hogan ("plaintiffs"[1] or the "Hogans") have owned land bordering Hiawatha Lake 1 in Greig since 1992. In 2002 and 2003, defendant Frank Rose purchased lots adjacent to the Hogans' property. Defendants Russell Falter and Kathy Wilson have also owned several lots of land bordering the Lake since 2001. Okudinani is the father of D.O., who, on several occasions, visited the Hogans at their home on the shore of Hiawatha Lake 1.

The District Court (Kahn, *J.*) dismissed on summary judgment the Hogans' claims alleging intentional infliction of emotional distress and abuse of process, as well as their claims brought under 42 U.S.C. § 1982, a statute described below.[2] The District Court permitted the state-law claims alleging private nuisance and interference-with-easement to proceed to a bench trial. Following trial, the District Court (Rothstein, *J.*) entered judgment in favor of defendants on all pending claims. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

I.

Plaintiffs first challenge the judgment for defendants on their claims brought under 42 U.S.C. § 1982. Section 1982 provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

---

[1] Dennis Okudinani is also a plaintiff. Relevant here, he brought a section 1982 claim as guardian and on behalf of D.O., a minor.

[2] The District Court also dismissed several other common-law and statutory claims. On appeal, plaintiffs do not challenge those rulings.

To prevail on a section 1982 claim, plaintiffs must show that (1) they are members of a racial minority; (2) the defendant intended to discriminate against them on the basis of race; and (3) the discrimination involved one or more activities enumerated in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (describing elements in analogous section 1981); *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987) (explaining that to state a section 1982 claim, a plaintiff must allege "a deprivation of his rights on account of his race").

The Hogans and Okudinani alleged that Vandewater, Falter, Wilson, and Rose violated section 1982 by interfering with their associational rights and enjoyment of the Hogans' property because of race. Plaintiffs allege that, on one occasion in 2009, Vandewater shouted a racial epithet when the Hogans' children and their friend D.O., who is black, were playing outside. They further allege that, on another occasion three years later, he made "gorilla" noises allegedly directed at the children. App'x 1182. They assert that Rose was with Vandewater on both occasions. Plaintiffs further allege, without reference to precise date or further circumstance, that defendants Falter and Wilson "repeatedly swerv[ed] their vehicle" at the Hogans' vehicle while D.O. was present in the car. App'x 1176-77. In addition, they claim that, in 2013, either Wilson or Falter saw D.O.'s sister swimming in Hiawatha Lake, and then called the Park Ranger and reported that plaintiff Mark Hogan was "polluting the lake." App'x 1183. (Hogan alleges that he was nowhere near the lake on that day.) Defendants all vehemently dispute the Hogans' account.

We may affirm the District Court's judgment in favor of defendants without resolving the factual dispute because we conclude that, even assuming that plaintiffs could establish their version of events, their allegations are insufficient to establish a section 1982 violation. Plaintiffs allege only a few isolated incidents over a span of at least four years. These cannot be said to have deprived them of any property rights enumerated in the statute.

The various out-of-circuit district court opinions relied on in plaintiffs' brief do not require us to disturb that conclusion. Most of those cases involved extreme acts of violence

4

or egregious harassment: detonating a flash simulator near the plaintiff's vehicle while she was driving; throwing a Molotov cocktail onto the plaintiffs' porch; and burning a cross on the plaintiffs' lawn. *See Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 849-50 (N.D. Ill. 2003) (flash simulator); *Byrd v. Brandeburg*, 922 F. Supp. 60, 62 (N.D. Ohio 1996) (Molotov cocktail); *Johnson v. Smith*, 810 F. Supp. 235, 236 (N.D. Ill. 1992) (burning cross). An individual subjected to a campaign of intimidation does not truly enjoy the freedom to hold property, a right protected by section 1982. But the isolated incidents alleged in this case do not cause a deprivation of plaintiffs' right to hold property, actionable under section 1982.

## II.

Plaintiffs assert that Vandewater and Rose are liable to them under New York law for intentional infliction of emotional distress ("IIED"). To establish such a claim, plaintiffs must show: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). Only conduct "utterly intolerable in a civilized community" can satisfy this demanding standard. *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (internal quotation marks omitted).

We reject the Hogans' argument on appeal that New York law did not require them to introduce medical evidence of their severe emotional distress as part of their claim. The overwhelming weight of authority from the appellate divisions, bolstered by dicta from the New York Court of Appeals, strongly suggests that summary judgment is appropriate in New York where, as here, plaintiffs failed to introduce sufficient medical evidence to support such a claim. *See, e.g.*, *Millan v. City of New York*, 791 N.Y.S.2d 419, 420 (1st Dep't 2005) (dismissing the plaintiff's claim for intentional infliction of emotional distress for failure to substantiate her claims "with medical evidence"); *Cusimano v. United Health Servs. Hosps., Inc.*, 937 N.Y.S.2d 413, 418 (3d Dep't 2012) (affirming summary dismissal where the plaintiff "presented no medical evidence to substantiate her general claims that she suffered severe emotional distress"). In *Ornstein v. New York City Health and Hosps. Corp.*, 881 N.E.2d

5

1187 (N.Y. 2008), the New York Court of Appeals remarked that "where supporting medical evidence is lacking, a trial court might well preclude a plaintiff from pursuing recovery for that component of psychic distress." *Id.* at 1192. This resolution was called for here, as the District Court found.

The Hogans rely primarily on three decisions by the Fourth Department to support their contrary position. *See Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 466 (4th Dep't 2006); *Zane v. Corbett*, 919 N.Y.S.2d 625, 629 (4th Dep't 2011); *Fellows v. Rosati*, 97 N.Y.S.3d 926 (4th Dep't 2019). Although the locus of the dispute in this case lies within the Fourth Department, these cases are not persuasive in light of the Court of Appeals' observation in *Ornstein* and the substantial contrary authority in the other Departments. *See Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) ("[T]he ruling of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (internal quotation marks and alterations omitted). Okudinani submitted no medical records to the District Court and, although the Hogans submitted medical records in opposition to the summary judgment motion (without any reference to any details in such records), these records contain insufficient medical evidence to support any claim for IIED.

## III.

The Hogans next challenge the dismissal of their abuse-of-process claims. They brought these claims against Lewis County and various Lewis County officials (together, the "Lewis County Defendants"). New York law recognizes an abuse-of-process claim against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*

6

*v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).[3] To survive a motion for summary judgment, the facts must tend to suggest that the defendants used legal process for an improper purpose.

Plaintiffs contend in part that the District Court relied on an incorrect legal standard when it observed that abuse-of-process claims may be based on events that occur only *after* initiation of legal process. We have remarked, however, that "the gist of abuse of process is the improper use of process *after it is regularly issued*." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (emphasis added) (internal quotation marks and alteration omitted). In any event, plaintiffs' abuse-of-process claims fail. As the District Court explained, the Hogans have not adduced evidence sufficient to raise a triable issue of fact as to whether the Lewis County Defendants used legal process to pursue improper, collateral objectives against the Hogans. We thus affirm the dismissal of plaintiffs' abuse-of-process claims for substantially the reasons articulated by the District Court.

IV.

Finally, the Hogans contend that the District Court erred in admitting and then relying on a 2015 survey of the Lot, the "Frymire Survey," with respect to their interference-with-easement and private nuisance claims. We review the District Court's evidentiary ruling for abuse of discretion and its related factual findings for clear error. *See Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). We afford district courts wide discretion in their evidentiary rulings, and will sustain such a ruling "unless manifestly erroneous." *Lore*, 670 F.3d at 155 (internal quotation marks omitted).

Plaintiffs assert that the District Court (Hurd, *J.*) abused its discretion by permitting admission of the Frymire Survey after the close of discovery. Their argument misses the mark. First, the Frymire Survey was directly relevant to the heart of the dispute between the

---

[3] Section 1983 liability "may lie for malicious abuse of criminal process" as a violation of the Due Process Clause of the Fourteenth Amendment. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Hogans and Rose and Vandewater—the exact location of the Hogans' easement. Second, plaintiffs received a copy of the Frymire Survey more than one and one-half years before the bench trial began. They thus cannot credibly contend that they were blindsided or unfairly prejudiced by its admission into evidence at that trial.

The Hogans also fail to establish that the District Court (Rothstein, *J.*) clearly erred by relying on the Frymire Survey to determine that defendants did not interfere with the Hogans' property rights. The District Court undertook a careful analysis of the original maps memorializing the Lot's subdivision, and concluded that the Frymire Survey best represented the intent behind those original maps. We discern no error in the District Court's analysis, and thus affirm the judgment entered in favor of defendants.

* * *

We have considered plaintiffs' remaining arguments and conclude that they are without merit. For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court